RAMÓN MONTANER, en su carácter de ADMINISTRADOR DEL FONDO DEL SEGURO DEL ESTADO recurrente, *v.* LA COMISIÓN INDUSTRIAL DE PUERTO RICO, compuesta de los SRES. MANUEL LEÓN PARRA, Presidente, y F. PAZ GRANELA y JUAN M. HERRERO, Comisionados Asociados, recurrida; y FRANCISCO GANDARILLAS GUERRA, a través de su madre con patria potestad LAURA GUERRA CUSTODIO, recurridos.

Núm. 27.—*Sometido:* Febrero 14, 1938. *Resuelto:* Marzo 31, 1938.

*Hon. Procurador General B. Fernández García; Emilio de Aldrey, Procurador General Auxiliar y Luis Negrón Fernández, abogado éste del Fondo del Estado, abogados del recurrente; Juan Lastra, abogado de la señora Guerra, recurrida.*

El Juez Asociado Señor Travieso emitió la opinión del tribunal.

El Administrador del Fondo del Seguro del Estado adjudicó una compensación de $2,166.82 por la muerte por accidente del trabajo del Policía Insular Francisco Gandarillas Méndez; y por convenio de 30 de marzo de 1937, entre el Administrador y los beneficiarios, el importe de la compensación fué distribuído de por mitad entre la viuda doña Eufrosina Bravo de Gandarillas y Francisco Gandarillas Guerra, hijo del finado habido en su primer matrimonio. En 23 de junio de 1937 el Administrador del Fondo suspendió los pagos adjudicados a la viuda, por razón de haber ésta contraído nuevo matrimonio. Dos días más tarde el hijo del finado solicitó que se le adjudicara la compensación que le había sido suspendida a la viuda. Negóse a ello el Administrador, fundándose en que dicho beneficiario debería atenerse a los términos del convenio de marzo 30, 1937, por el cual él aceptó la suma de $1,083.41 como compensación y relevó de toda responsabilidad ulterior al patrono y al Fondo del Seguro del Estado. Apeló el beneficiario ante la Comisión Industrial. El Administrador del Fondo solicitó la desestimación de la apelación por entender que los estatutos vigentes no conceden el derecho de apelación que el peticionario trata de ejercitar y que la comisión carece de jurisdicción para conocer del recurso. Resolvió la comisión que tenía jurisdicción para conocer de la apelación y ordenó el pago de la compensación al beneficiario reclamante. Solicitada la reconsideración de dicha orden y denegada ésta por la comisión, el Administrador estableció el presente recurso.

Alega el Administrador recurrente que la resolución recurrida es nula, ilegal y contraria a derecho por las siguientes razones:

1ª. Que la Comisión carecía de jurisdicción para conocer de la apelación interpuesta por el beneficiario, por cuanto la ley vigente no concede tal derecho de apelación.

2ª. Que el beneficiario está impedido de hacer reclamación, alguna en cuanto a compensación, por los términos del contrato de 30 de marzo de 1937 por el cual relevó al Administrador de toda responsabilidad ulterior.

3ª. Que es al administrador y no a la Comisión Industrial a quien la ley confiere la facultad de hacer una redistribución, en caso de que tal cosa procediera.

4ª. Que el derecho que pueda tener el beneficiario a que se le adjudique la porción suspendida a la viuda no puede sustanciarse mediante apelación ante la Comisión Industrial, sino mediante una acción plenaria ante una Corte de jurisdicción general.

■ Consideraremos primeramente la cuestión jurisdiccional levantada por el recurrente. Su resolución depende de la interpretación que demos a las siguientes disposiciones de la Ley núm. 45 de 18 de abril de 1935 (pág. 251) denominada "Ley de Compensaciones por Accidentes del Trabajo":

"La Comisión Industrial tendrá exclusivamente funciones de naturaleza cuasi judicial y cuasi tutelar para la investigación y resolución de todos los casos de accidentes en los cuales el Administrador y el obrero o empleado lesionado, o sus beneficiarios, no llegasen a un acuerdo con respecto a la compensación según se dispone en el artículo 9 de esta Ley, y en el ejercicio de sus funciones representará solamente el interés público." (Párrafo 9, inciso (b), artículo 6.)

"Si el Administrador y el obrero o empleado asegurado no llegaren a un acuerdo respecto a la compensación, o si después de haber llegado a un acuerdo, que haya sido firmado y radicado en armonía con esta Ley, habiéndose pagado la compensación o estando pendiente de pagarse de acuerdo con esta Ley, hubiere una infracción del acuerdo en cuanto a la continuación de los pagos semanales bajo dicho acuerdo o por cualquier otro motivo bajo dicho acuerdo, cualesquiera de las partes podrá notificar a la Comisión Industrial, la que señalará el caso para ser oído por la Comisión Industrial o por un Comisionado." (Artículo 10, primer párrafo.)

Arguye el recurrente que de acuerdo con el estatuto la facultad de la comisión para revisar las decisiones del Administrador está limitada a los casos: (*a*) cuando el administrador y el obrero no llegaren a un acuerdo respecto a la compensación; (*b*) cuando habiendo llegado a un acuerdo ocurriere alguna infracción del mismo en cuanto a la continuación de los pagos semanales bajo tal acuerdo; y (*c*) cuando haya habido una infracción por motivo otro cualquiera bajo dicho acuerdo. Y alega que en el caso de autos el Administrador y los beneficiarios llegaron a un acuerdo el 30 de marzo de 1937, hecho que impide que la Comisión Industrial asuma jurisdicción, por ser dicho convenio obligatorio, de acuerdo con el artículo 9 de la citada "Ley de Compensaciones por Accidentes del Trabajo," que dispone:

"Artículo 9.—El Administrador queda facultado por la presente para celebrar convenios con el obrero o empleado lesionado, o sus beneficiarios en caso de muerte, con respecto a la compensación siempre que los mismos estén comprendidos dentro de los términos fijados por esta Ley. Tales convenios después de estar debidamente firmados por el Administrador y el reclamante serán obligatorios y se cumplirán como si fueran la decisión del Administrador. Una copia de todo convenio entre el Administrador y el reclamante será radicada en la Comisión Industrial.

"Todo arreglo, convenio o transacción entre el Administrador y el lesionado o sus beneficiarios en casos de accidente, enfermedad o muerte, tendrá el efecto de relevar al patrono de toda responsabilidad ulterior por el accidente, enfermedad o muerte que motivó tal convenio, arreglo o transacción."

Opinamos que la jurisdicción de la comisión es más extensa que la que le concede el recurrente. El Administrador del Fondo del Estado es un funcionario ejecutivo o administrativo encargado de cumplir todos los deberes que taxativamente le concede la ley creadora de su cargo. No ha sido, a nuestro juicio, el propósito del legislador conceder a dicho funcionario poderes dictatoriales para la resolución de las cuestiones que puedan ser sometidas a su consideración, pues en ninguna parte del estatuto encontramos disposición alguna al

efecto de que las decisiones del Administrador del Fondo del Estado deberán tener el carácter de firmes, definitivas o inapelables. El legislador, como poder regulador de la organización por él creada para el funcionamiento y aplicación de la ley de compensaciones por accidentes del trabajo, creó la Comisión Industrial y la invistió de facultades cuasi judiciales y cuasi tutelares, para que fuera ella y no los tribunales de justicia ordinarios la encargada de dirimir en primera instancia las contiendas que pudiesen surgir entre el Administrador, como funcionario ejecutivo, y los obreros lesionados o sus beneficiarios con respecto a la compensación a que éstos pudiesen tener derecho. No tenemos duda alguna en cuanto a que ése es el espíritu y el propósito del párrafo 9, inciso (*b*) del artículo 6, supra.

Es cierto que el Administrador recurrente y el hijo del obrero difunto llegaron a un acuerdo en cuanto a la división de la compensación entre dicho hijo y la viuda. Pero aquí no se trata del incumplimiento de ese contrato por parte del beneficiario, sino de una situación nueva de derecho creada por el hecho posterior de haber contraído nuevas nupcias la viuda del obrero difunto, después de habérsele adjudicado parte de la compensación. Se trata, pues, de una nueva, distinta y separada reclamación de compensación, con respecto a la cual el Administrador y el beneficiario reclamante no han podido llegar a un acuerdo. Para dirimir la contienda y decidir si la compensación adjudicada a la viuda reincidente en el matrimonio debe permanecer en el Fondo del Estado para beneficio del público o si debe adjudicarse al otro beneficiario hijo del difunto, la Comisión Industrial tiene amplia y completa jurisdicción dentro de una interpretación estricta del estatuto.

No cometió error la Comisión Industrial al asumir jurisdicción sobre la controversia en este caso.

■ La doctrina de *estoppel* invocada por el recurrente para sostener que el beneficiario reclamante está impedido

por los términos del contrato de 30 de marzo de 1937 de hacer reclamación otra alguna en cuanto a compensación, no es de aplicación al caso de autos.

El recurrente no nos ha suministrado los datos necesarios para que podamos conocer los términos exaetos del citado contrato entre el Administrador del Fondo del Estado y la viuda y el hijo del obrero difunto. En el expediente elevado ante nos por el Secretario de la Comisión Industrial no aparece ni el original ni copia alguna de dicho contrato. Nos vemos obligados a resolver el punto teniendo en cuenta solamente las alegaciones que hace el recurrente en su solicitud de revisión, a saber:

"Que en 13 de enero de 1936 el Policía Insular Francisco Gandarillas Méndez sufrió un accidente del trabajo que le causó la muerte, por la cual el Fondo del Seguro del Estado adjudicó una compensación en el caso ascendente a $2,166.82, habiéndose distribuído dicha compensación en la siguiente forma: a la viuda doña Eufrosina Bravo Vda. de Gandarillas el 50% de dicha compensación, o sea $1,083.41, y a Francisco Gandarillas Guerra, hijo menor del obrero occiso habido en su primer matrimonio con Laura Guerra Custodio, el 50% de dicha compensación ascèndente a la misma cantidad.

"Que con fecha 30 de marzo de 1937 se firmó un convenio respecto a la compensación entre dichos beneficiarios y el Administrador del Fondo del Seguro del Estado, por el cual los mismos aceptaron las compensaciones a cada uno de ellos adjudicadas."

Alegó además el recurrente que "habiendo convenido las partes con fecha 30 de marzo de 1937 en cuanto al montante de la compensación que le correspondía a dicho beneficiario y habiendo sido relevado el Administrador expresamente de toda responsabilidad ulterior por el mismo, dicho beneficiario está impedido de hacer reclamación otra alguna en cuanto a compensación."

El Administrador, procediendo de acuerdo con lo dispuesto en el inciso 5 del artículo 3 de la Ley de Compensaciones, adjudicó una compensación total de $2,166.82 y deci-

dió que esa suma debía ser distribuída por partes iguales entre la viuda y el hijo. Los dos beneficiarios aceptaron la adjudicación y el plan de distribución del Administrador y relevaron a éste de toda responsabilidad ulterior, lo que equivale a decir que se comprometieron tanto la viuda como el hijo a no hacer nuevas reclamaciones en exceso de la suma de $2,166.82 que les había sido adjudicada y que no alcanzó el máximum de $3,000 fijado por el citado estatuto. No encontramos justificación alguna para que decidamos que el beneficiario reclamante renunció también su alegado derecho a reclamar el pago de la mitad de la suma adjudicada que había sido asignada a la viuda. Al reclamar esa suma no se está exigiendo al Administrador una responsabilidad ulterior o adicional, en exceso de la responsabilidad ya fijada por el mismo Administrador en la suma de $2,166.82, sino simplemente que haga, si procede, una redistribución de la cantidad adjudicada y asignada para compensación por la muerte del obrero. Resolvemos, por lo tanto, que el beneficiario no está legalmente impedido para hacer tal reclamación.

La cuestión fundamental envuelta en el presente recurso puede formularse así: ¿Tiene un beneficiario a quien se ha asignado parte de la compensación total adjudicada, derecho a que se le pague la parte concedida a otro beneficiario, en caso de que el derecho de éste a recibir dicha parte cesare por alguno de los motivos especificados en la ley?

El párrafo quinto del inciso 5 del artículo 3 de la Ley de Compensaciones por Accidentes del Trabajo lee así:

"Al volver a casarse la viuda o viudo los pagos parciales concedídosle para su beneficio cesarán por completo; y cesarán igualmente al morir cualquiera otro de los beneficiarios a quien se estuviere haciendo tales pagos parciales y en casos de menores cesarán igualmente tales pagos al llegar éstos a la edad de 18 años, a menos que estuvieran incapacitados para el trabajo."

No encontramos en la ley precepto expreso alguno que determine la disposición que deba darse a aquella parte de la compensación adjudicada por el accidente, que no pudiere ya pagarse a la viuda por haber contraído nuevas nupcias o un menor beneficiario por haber llegado a la edad de 18 años. Debemos, por tanto, examinar la jurisprudencia interpretativa de estatutos similares para que ella nos sirva de guía en la resolución de esta cuestión.

En el caso de *Central Iron & Coal Co.* v. *Coker,* 217 Ala. 472, 116 So. 794, la Corte Suprema de Alabama, interpretando un estatuto prácticamente igual al nuestro se expresó así:

"En cuanto a las disposiciones de la Sección 7556, de que 'Si la compensación se está pagando de acuerdo con el Artículo 2 de este Capítulo a cualquier dependiente, dicha compensación cesará al ocurrir la muerte o el matrimonio de tal dependiente, y la dependencia de un hijo terminará a la edad de 18 años a menos que aquí se dispusiere otra cosa,' y disposiciones similares de la Sección 7654: Estas disposiciones, se refieren al matrimonio de la viuda, lo mismo que a otros dependientes, y cuando estas disposiciones son interpretadas en relación con la Sección 7555, adoptando una política de interpretación liberal, para llevar a efecto el propósito del estatuto, suministrar compensación, en una medida por la pérdida sufrida por los dependientes del obrero difunto, en el caso de su muerte, se llega a la conclusión de que el único efecto de estas disposiciones es impedir que la compensación pase al representante personal, en caso de muerte de uno o más de los dependientes, y, en el caso de cesar la dependencia, por el matrimonio del dependiente, ordenar su aplicación a los dependientes remanentes. Tal fué la opinión de la Corte en el recurso anterior, y en *Ex parte Todd Shipbuilding & Dry Docks Co.,* 212 Ala. 477, 103 So. 447, en el cual la cuestión fué ampliamente considerada.

" . . . . . . . . .

"Si el empleado—el marido y padre en este caso—hubiese vivido, debemos asumir que los hijos dependientes remanentes hubieran recibido el beneficio de sus ganancias mientras continuasen dependiendo de él, aun cuando otros que estaban en la misma clase, en la fecha en que surgió la causa de acción por razón de su muerte, habían dejado de ser dependientes por razón de haber cumplido la

edad, contraído matrimonio o muerto, y no vemos medio de evitar la conclusión de que dichos dependientes remanentes en esta clase tienen derecho al beneficio del importe total adjudicado, aun cuando algunos de los dependientes hayan pasado el límite de edad o se hayan casado o muerto. El estatuto fué así interpretado en *Ex parte Todd Shipbuilding & Dry Docks Co.*, supra, y la consideración debida a la máxima del *stare decisis*, nos obliga a adherirnos a esa interpretación judicial, silenciando la controversia. *Lindsay* v. *U. S. Savings & Loan Ass'n.*, 120 Ala. 156, 24 So. 171, 42 L.R.A. 783.''

Véanse también: *Smith* v. *State Highway Commission,* 78 Ind. App. 301, 134 N. E. 225; *In Re Summers,* 79 Ind. App. 108, 137 N. E. 291; y *Cullen* v. *Pan Handle Coal Co.*, 81 Ind. App. 213, 141 N. E. 647.

Nuestra Ley de Compensaciones dispone en su Artículo 3, inciso 5, que cuando el obrero dejare una viuda e hijos legítimos dependientes total o parcialmente para su subsistencia de lo que ganaba el obrero al tiempo de su muerte, dichos dependientes recibirán una compensación de $1,000 a $3,000, ''que se graduará en atención a la capacidad económica del obrero o empleado fallecido y sus probabilidades de vida.''

En el caso de *Smith* v. *State Highway Commission,* supra, la Corte Suprema de Indiana se expresó así:

''El total del beneficio de muerte (*death benefit*) así determinado es la medida de la responsabilidad del patrono. No hay medio por el cual la responsabilidad del patrono pueda ser reducida, como no sea porque cese la dependencia de todos los beneficiarios antes de la terminación del período máximo de compensación; pero mientras viva un beneficiario, los plazos semanales completos deben ser pagados hasta el final del período máximo de compensación, a menos que se pague en efectivo el valor conmutable de la misma según lo dispuesto por la ley. . . No existe nada en el estatuto que sostenga la teoría de que cuando hay dos o más dependientes, la muerte de uno de ellos antes de la terminación del período máximo de compensación tendría el efecto de relevar al patrono por el montante de una participación. El único propósito que se persigue al ordenar que el fondo se pague a los dependientes en participaciones iguales es el de asegurar a éstos igual cuidado y sostenimiento, de

manera que ninguno de ellos se beneficie a expensas de los demás, y que ninguno de ellos quede desamparado y pueda convertirse en una carga sobre los contribuyentes. Esa parte del estatuto es, sin embargo, una cuestión estrictamente entre los dependientes y el Estado, y no entre los dependientes y el patrono. La hogaza de pan completa debe ser entregada semanalmente. Si no hay más que un dependiente, ese afortunado se aprovechará de ella enteramente. Si hay dos o más dependientes, entonces la hogaza se dividirá en tantas porciones iguales como bocas haya que alimentar.''

Vemos, pues, que de acuerdo con nuestro estatuto, para fijar la compensación en caso de muerte (*death benefit*) el Administrador del Fondo del Estado sólo puede tomar en consideración: (*a*) la capacidad económica y (*b*) las probabilidades de vida del obrero fallecido. El número mayor o menor de personas dependientes del obrero no es un elemento que deba tomarse en consideración para medir la responsabilidad del patrono.

El número de beneficiarios o dependientes del obrero fallecido, que puedan tener derecho a participar en la distribución del fondo, sólo puede ser tenido en cuenta por el Administrador después de fijado el montante total de la compensación, cuando llegue el momento de cumplir el deber paternal que la ley le asigna de distribuir esa compensación entre los beneficiarios de acuerdo con la condición, necesidades, grado de parentesco y dependencia de cada uno. Si el Administrador, al tratar de cumplir ese deber, logra poner de acuerdo a los beneficiarios y celebra con ellos un contrato estipulando la suma que cada uno de ellos habrá de recibir mientras tenga derecho a participar de la indemnización, ese contrato no puede tener el efecto de una renuncia del derecho a reclamar que se haga una redistribución del fondo cuando uno de los beneficiarios hubiere perdido su derecho por razón de edad, matrimonio o muerte. En el caso de *Sumner Sollitt Co.* v. *Sheely*, 85 Ind. App. 312, 153 N. E. 894, en el que los hechos eran idénticos a los del caso de autos, se sostuvo que cuando la Comisión Industrial, después

de aprobar un convenio sobre compensación que disponía que la viuda e hijo menor recibirían $6.60 semanales, ordenó la terminación de la compensación a la viuda al volver ella a casarse, la orden no relevó al patrono de la obligación de pagar de ahí en adelante la compensación completa de $13.20 semanales al menor.   Véanse: *Reliance Coal & Coke Co.* v. *Fugate,* 24 S. W. (2d) 705, y *Gallagher* v. *United Electric Rys. Co.,* 134 Atl. 8.

*Por las razones expuestas, se confirma la resolución recurrida que dictó la Comisión Industrial en diciembre 21, 1937.*

El Juez Asociado Señor Córdova Dávila no intervino.