RAMÓN VILLA RODRÍGUEZ, recurrente, *v.* COMISIÓN INDUSTRIAL DE PUERTO RICO, demandada; CARLOS NICOLE, patrono.

Núm. 353.—*Sometido:* Diciembre 10, 1945. *Resuelto:* Enero 18, 1946.

*Bauzá & Bauzá,* abogados del recurrente; *A. de Jesús Matos* y *A. Sandín del Manzano,* abogados del Fondo del Seguro del Estado.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

La Ley de Compensaciones por Accidentes del Trabajo de 1935 disponía que en caso de muerte el beneficiario reci-

birá de mil a tres mil dólares, "que se graduará en aten-
ción a la capacidad económica del obrero o empleado falle-
cido y sus probabilidades de vida, de acuerdo con las reglas
que deberá preparar el Administrador del Fondo del Estado,
las que tendrán fuerza de ley después de aprobadas por la
Comisión Industrial y el Gobernador, y promulgadas de
acuerdo con la Ley." Artículo 3, inciso 5, Ley núm 45, Le-
yes de P. R., 1935 ((1) pág. 251).

De conformidad con el inciso 5, se promulgó un número
de reglas. La Regla núm. 2 disponía que "la compensación
que corresponda por el factor 'Capacidad Remunerativa' se
determinará de acuerdo con el Jornal que ganaba el obrero
o empleado fallecido el día de la ocurrencia del accidente
que motivó su muerte."[1]

Las referidas reglas también contienen una tabla para
computar la compensación. Bajo la referida tabla se esta-
blecen dos cifras separadas. Una se obtiene otorgándole
una compensación máxima de $3,000 a los obreros de 18
años de edad y graduando la compensación al mínimo de
$1,000 para los obreros de 45 años. La segunda cifra se
obtiene por un proceso similar de gradación basado en el
jornal diario del obrero, quien recibe la compensación má-
xima en caso de que se le paguen $4.50 diarios Las dos
cifras se suman y se dividen por dos con el fin de obtener
la compensación concedida.[2]

En el presente caso el Administrador resolvió que el
obrero cuya muerte ocurrió en el curso de su empleo, tenía
39 años de edad y ganaba 30 centavos la hora por un día
de ocho horas, o $2.40 diarios. Aplicándole la Regla 2 y la
tabla arriba mencionada, el Administrador le concedió a la
madre del obrero, como su beneficiaria, la suma de $1,697.22.

[1] De Jesús Matos, Los Accidentes del Trabajo, Apéndice B, pág. 209.

[2] El inciso 5 del artículo 3 fué enmendado por la Ley núm. 284, Leyes
de P. R. 1945 (pág. 1037), aumentando la compensación mínima y máxima. En
su consecuencia, se ha puesto en vigor una nueva tabla. Sin embargo, el pro-
blema en este caso permanece inalterado.

Esta resolución fué confirmada por la Comisión Industrial. Expedimos el auto de revisión a solicitud de la beneficiaria para revisar la decisión de la Comisión.

El obrero trabajaba como ayudante de camión y fué muerto mientras su camión cargaba en San Juan. Empezó a trabajar a las 7:30 a.m. y el accidente ocurrió a las 11 a.m. El obrero estaba supuesto a ir hasta Mayagüez para donde estaba destinada la carga del camión. Si bien la prueba es contradictoria en cuanto a la hora de partida del camión y su *trailer* para Mayagüez, se admite que tal viaje de ordinario requería siete horas. Por tanto la beneficiaria alega que de no haber ocurrido el accidente, el finado hubiera trabajado por lo menos diez horas y media.(³)

Cualquiera que pueda ser la cifra exacta en cuanto al número de horas que el obrero hubiera trabajado y el tipo de jornal que hubiera recibido,(⁴) afirma la beneficiaria que la paga diaria hubiera sido mayor de $2.40, la paga por un día de ocho horas a 30 centavos la hora, de no haber ocurrido el accidente. Por tanto, alega que debió haberse usado una cifra mayor que la de $2.40 al otorgarse la compensación.

Al presentar este argumento, la beneficiaria descansa en los incisos 2, 3 y 4 del artículo 3 de la Ley núm. 45, así como

---

(³) Igual que en otras fases de este caso, es difícil seguir la prueba sobre este punto. Nunca se aclaró si el obrero tenía algunos deberes en el viaje a Mayagüez aunque aparentemente se admite que estaba supuesto a hacer el viaje y que se le hubiera pagado por el mismo. Sin embargo, hubo prueba al efecto de que bajo algunas circunstancias el ·chófer llevaba dinero consigo y alquilaba alguna persona cuando llegaba a su destino para que ayudara a descargar el camión. El récord guarda silencio sobre si tal ayuda temporal era en adición a o para sustituir al obrero aquí envuelto.

(⁴) La prueba está fragmentada y es confusa sobre estos dos puntos. Es difícil decir si el representante del patrono tuvo la intención de declarar que éste siempre pagaba .tiempo y medio después de la octava hora, o sólo después de la cuadragésima hora a la semana, según lo exige la Ley Federal Sobre Normas Razonables del Trabajo. Además, bajo la ley insular, el obrero tenía derecho a recibir doble paga por la novena hora y paga ordinaria por todas las horas adicionales a la novena bajo un contrato de 30 centavos la hora por un día de ocho horas. *Avellanet* v. *Porto Rican Express Co.*, 64 D.P.R. 693, 697.

también en el inciso 5, que ya se ha citado. Los incisos 2, 3 y 4 disponen que en caso de incapacidad temporal, parcial permanente, o total permanente, respectivamente, el obrero recibirá compensación semanal sobre períodos de tiempo que varían según sea el caso. Sin embargo, estos tres incisos tienen una disposición en común: la compensación será una suma igual a la "mitad del jornal que percibía el día del accidente, o que hubiere de percibir a no ser por la ocurrencia del accidente . . . "(⁵)

A pesar del hecho de que los incisos 2, 3 y 4 en sus términos se aplican solamente a casos de incapacidad, la beneficiaria descansa en ellos aquí. Y arguye que a tenor con sus disposiciones y con las disposiciones del inciso 5, lo que el obrero hubiera percibido a no ser por el accidente, es determinado sumando el tiempo trabajado por aquél al tiempo trabajado por su sustituto el día del accidente.

El Administrador no comenta la contención de la beneficiaria al efecto de que los incisos 2, 3 y 4 se aplican a casos de muerte; en verdad, al redactar la Regla 2 según se copia arriba, el Administrador hizo la regla para casos de muerte sustancialmente similar a aquella contenida en el estatuto para casos de incapacidad. El Administrador, por tanto, no distingue entre casos de incapacidad y casos de muerte. Su argumento es otro. Sostiene que en vista de la Ley núm. 49, Leyes de P. R., 1935, Sesión Extraordinaria (pág. 539), se debe presumir que el empleado no hubiera trabajado más de ocho horas. Arguye que la limitación legal de un día de trabajo de ocho horas prohibe el uso de un período mayor al hacer los cálculos a menos que se demuestre que el accidente de hecho ocurrió durante horas extras de trabajo. El Administrador afirma que sólo cuando esto ocurre es que usa para sus cálculos las horas extras trabajadas, pero no en ningún otro caso.

(⁵) Los incisos 2, 3 y 4 fueron enmendados por la Ley núm. 284 de 1945, aumentando la compensación, pero dichas enmiendas no afectan nuestro problema.

La teoría del Administrador es que el trabajar ocho horas depende de la voluntad del obrero, quien nunca tiene la oportunidad de ejercitarla si es muerto o herido durante las primeras ocho horas de trabajo. El Administrador, por tanto, se niega a tomar en cuenta las horas trabajadas por el sustituto del obrero lesionado si sumando las dos cifras resulta en un día de trabajo de más de ocho horas. Afirma, en efecto que, sin distinguir entre casos de muerte y de incapacidad, siempre calcula la compensación a base de un día de trabajo que no exceda de ocho horas, si el accidente ocurrió, como aquí, antes de expirar la octava hora. Sin embargo, por razones que más adelante veremos, creemos innecesario elegir entre las teorías en conflicto del Administrador y de la beneficiaria, por lo menos, en este caso específico.

Tanto la beneficiaria como el Administrador están equivocados en cuanto a la teoría bajo la cual debe resolverse este caso. Ambos han pasado por alto la distinción que la Ley traza entre los casos de incapacidad y los de muerte. En uno de incapacidad la ley dispone que la paga que el obrero de hecho recibía o hubiera recibido el día del accidente es la base para determinar su compensación. Esto no es cierto en un caso de muerte. En el último, la fórmula estatutaria es diferente: la capacidad remunerativa del obrero fallecido.

■■ Al redactar la Regla 2, el Administrador igualó los casos de muerte a los de incapacidad: la compensación en ambos casos es calculada por él a base de lo que el obrero percibía o hubiera percibido el día del accidente. Pero si bien esto es exigido por el estatuto en los casos de incapacidad, no es exigido ni autorizado en los de muerte.

Como hemos visto, el inciso 5 dispone que en casos de muerte la compensación será graduada de conformidad con

la capacidad remunerativa del obrero fallecido. Y, en términos generales, no vemos objeción alguna al empleo de los jornales diarios para determinar la capacidad remunerativa. Por tanto, fué correcto incluir en las reglas promulgadas de acuerdo con el inciso 5, la tabla conteniendo la compensación graduada basada en los jornales diarios.

Pero al permitir el uso de jornales diarios para determinar la capacidad remunerativa, debemos tener en cuenta que la capacidad remunerativa significa habilidad para ganar dinero, no simplemente lo que el obrero de hecho ganó en un día específico. En su consecuencia, al disponer la Regla 2 que el jornal diario se determinará en todos los casos estableciendo el jornal que el obrero de hecho recibió el día del accidente, se desvía del requisito estatutario de que la compensación será graduada de acuerdo con la capacidad remunerativa. En otras palabras, el Administrador y la Comisión han cometido error, al actuar bajo la tabla cuya validez se admite, cuando automáticamente emplearon como capacidad remunerativa del obrero la suma que éste percibió o debió haber percibido en determinado día, el día del accidente. Esa cifra podría o no reflejar su capacidad remunerativa; sólo la investigación posterior podría revelar la verdad. Si el obrero trabajó más de un día, debe examinarse el cómputo de su jornal diario durante un período mayor, incluyendo paga extra, de haber alguna,(⁶) con el fin de determinar su jornal diario que viene a ser la clave para su capacidad remunerativa.

Reconocemos que para muchos obreros, si no para casi todos, y en particular en los casos de obreros no adiestrados, un día de ocho horas a un tipo específico por hora de

---

(⁶) Solamente debe incluirse el trabajo extra si las cifras revelan que ocurrió tan frecuentemente que es menester concluir que un día típico de trabajo incluye cierta suma correspondiente a tiempo extra. (Véanse Campbell, *infra*, sección 1004, pág. 878; Horovitz, *infra*, pág. 266.) La fórmula es encontrar el promedio de jornal diario,—podrían ser cuatro, ocho, o doce horas de trabajo, dependiendo en el historial de cada obrero en particular.

ordinario sería típico de su capacidad remunerativa.([7]) Pero el Administrador y la Comisión deben dar algunos pasos para convencerse de que ésos son los hechos en el caso específico que está ante ellos. El jornal que el obrero estaba supuesto a percibir el día del accidente debe ser por un día típico para ser determinante; no puede aceptarse éste automáticamente, toda vez que de la investigación podría surgir que era más—o menos—que lo que el obrero corrientemente ganaba. La compensación en un caso de muerte, en vista de la fórmula estatutaria, no puede predicarse en la circunstancia fortuita de un jornal mayor—o menor—percibido el día del accidente, sino más bien en el promedio del jornal diario sobre un período mayor. Véanse Campbell, *Workmen's Compensation,* Vol. I, sección 991; Schneider, *Workmen's Compensation Law, Second Edition,* Vol. II, secciones 429-38; Horovitz, *Injury and Death Under Workman's Compensation Laws,* págs. 262-67; *Cf. Montaner* v. *Comisión Industrial,* 52 D.P.R. 924, 932.

En resumen, la Legislatura estableció una fórmula un poco rígida para los casos de incapacidad de la cual el Administrador y la Comisión no pueden desviarse.([8]) Pero la Legislatura ha establecido una regla más flexible para casos de muerte. Y es el deber de la Comisión en casos de muerte tomar en consideración datos sobre el jornal, de existir éstos, en adición al jornal que el obrero percibía o debió haber percibido el día del accidente. Solamente de esta manera podría cumplirse con el mandato legislativo de que la compensación en casos de muerte será a base de la capacidad remunerativa. De lo que hemos dicho resulta que la

([7]) Esto se torna aún más evidente cuando contemplamos el hecho de que la escala de compensación provista en la tabla varía entre 50 centavos y $4.50 diarios. Aún a la cifra máxima no es probable que un obrero dentro de esta escala tenga una capacidad remunerativa que fluctúe considerablemente. .

([8]) Ya hemos indicado que el problema de si el Administrador, para calcular la compensación en un caso de incapacidad, debe usar el tiempo después de las ocho horas trabajado por el sustituto del obrero lesionado, no está ante nos y por tanto no puede resolverse en este caso.. ·

Regla 2 está en conflicto con la norma estatutaria y por tanto es inválida.

*La decisión de la Comisión será revocada y se devolverá el caso para la presentación de prueba adicional, de existir alguna, en cuanto al jornal diario del obrero durante un período razonable con anterioridad al accidente, y para ulteriores procedimientos no inconsistentes con esta opinión.*