Rafael Buscaglia, Tesorero de Puerto Rico, peticionario, *v.* Tribunal de Contribuciones de Puerto Rico, demandado; Crown Beverages, Inc., interventora.

Núm. 126.—*Sometido:* Diciembre 3, 1946. *Resuelto:* Marzo 12, 1947.

*Hon. Procurador General Interino, Luis Negrón Fernández, J. B. Fernández Badillo, Procurador General Auxiliar y Manuel Ledesma Dávila,* abogado, División Contribuciones, etc., abogados todos del peticionario; *James R. Beverley, José López Baralt y R. Rodríguez Lebrón,* abogados de la interventora, querellante en el pleito principal.

El Juez Presidente Señor Travieso emitió la opinión del tribunal.

Crown Beverages Inc., corporación dedicada a la manufactura y embotellado de bebidas refrescantes y gaseosas, empezó desde el primero de julio de 1944 a introducir en

Puerto Rico piezas y accesorios que alega son esenciales e imprescindibles para el funcionamiento de su planta industrial. El Tesorero de Puerto Rico le requirió el pago de arbitrios sobre dichas piezas y accesorios. La interventora hizo el pago bajo protesta y acudió al Tribunal de Contribuciones de Puerto Rico, alegando que los arbitrios le habían sido cobrados ilegalmente por cuanto los artículos sobre los cuales se impuso la aludida contribución estaban cubiertos por la exención contributiva dispuesta en la Ley núm. 77 de 9 de mayo de 1944 (pág. 167); y que las piezas y accesorios sobre los cuales el Tesorero impuso la contribución constituyen aparato y equipo que son esenciales para el funcionamiento de su planta industrial. La interventora solicitó la devolución por el Tesorero de los arbitrios pagados bajo protesta, más intereses legales con costas y honorarios de abogado.

En su contestación el Tesorero aceptó el hecho de que las piezas y accesorios de referencia eran esenciales para el funcionamiento de la planta industrial de la interventora, pero negó que dichas piezas y accesorios estuvieran exentos del pago de arbitrios a tenor de las disposiciones de la Ley núm. 77 de 9 de mayo de 1944. El Tesorero ha interpretado dicha ley en el sentido de no eximir del pago de arbitrios las piezas y partes de repuesto cuando éstas sean introducidas u obtenidas separadamente del equipo principal. Tal interpretación aparece consignada en el Reglamento de Exención Industrial promulgado por el Tesorero de Puerto Rico el día 22 de agosto de 1944, a tenor con la Ley núm. 77 del 9 de mayo de 1944, Reglamento núm. 52, sección 2, artículo 4(e).

Sometido el caso al Tribunal de Contribuciones de Puerto Rico éste resolvió, que habiendo aceptado el Tesorero en su contestación a la querella original y alegaciones suplementarias que dichas piezas y accesorios eran esenciales para el funcionamiento de la planta industrial de la promovente, dichas piezas y accesorios están exentas del pago de arbitrios

por la Ley núm. 77 de 9 de mayo de 1944, ordenando al Tesorero que reintegrara a la querellante los arbitrios pagados bajo protesta más los intereses a razón de 6 por ciento anual.

Señala el Tesorero varios errores que a su juicio cometió el Tribunal de Contribuciones. Los discutiremos conjuntamente por entender que la única cuestión envuelta en este caso es determinar si las piezas y accesorios aquí envueltos están amparados por la Ley núm. 77 de 9 de mayo de 1944, y por consiguiente exentos de los arbitrios impuestos.

 La Ley núm. 77 de 9 de mayo de 1944 reza así:

"Sección 16–B.—Estarán exentos del pago de los arbitrios impuestos por esta Ley toda maquinaria, aparato o equipo que sea esencial para el establecimiento y funcionamiento de plantas industriales. *Disponiéndose,* que el Tesorero de Puerto Rico dictará los reglamentos que fueren necesarios para dar cumplimiento a las disposiciones de esta sección."

Y el Reglamento de Exención Industrial promulgado por el Tesorero de Puerto Rico el 22 de agosto de 1944, a tenor con la Ley núm. 77 de 9 de mayo de 1944, Reglamento núm. 52, sección 2, artículo 4(*e*) dice:

"Maquinaria, aparato o equipo:

El alcance de la exención no ampara las partes, piezas y accesorios de la maquinaria, aparato o equipo industrial cuando sean importados u obtenidos en plaza separadamente del equipo principal del que eventualmente formarán parte o auxiliarán en su funcionamiento. Tampoco ampara la maquinaria, aparato o equipo cuando ésta venga a ser 'materia prima' en aquellas industrias del tipo descrito en el Artículo 4(*a*)."

Cuando la legislatura aprueba una ley necesariamente tiene una intención específica con respecto a todos los casos que posteriormente surgieren bajo esa ley. El problema es meramente determinar la intención legislativa, lo cual puede hacerse, considerando el propósito o motivos que tuvo la legislatura al aprobar la ley.

Es de conocimiento general que la situación económica y las condiciones sociales prevalecientes en esta Isla, causa-

das por la densidad de nuestra población y por la falta de industrias en las que puedan encontrar empleo nuestras clases trabajadoras, sólo podrían ser remediadas mediante el establecimiento de nuevas industrias. Con el evidente propósito de atraer al capital, tanto doméstico como extranjero, y de facilitar su inversión en el establecimiento y funcionamiento de plantas industriales en esta Isla, la Legislatura de Puerto Rico ha venido desde el año 1919 siguiendo la política de eximir del pago de contribuciones y arbitrios a varias y determinadas industrias contribuyendo así de una manera práctica al fomento y desarrollo de la industrialización insular.

Tenemos ante nos, otra Ley de exención contributiva, la núm. 77 de 1944. Esta ley exime del pago de arbitrios "toda maquinaria, aparato o equipo que sea esencial para el establecimiento y funcionamiento de plantas industriales." Esta nueva ley, también persigue el propósito de estimular y fomentar el establecimiento de plantas industriales en Puerto Rico. La intención legislativa, se desprende del claro lenguaje del estatuto. No puede ser otra sino la de librar lo más posible a las plantas industriales de cargas contributivas, para así atraer el mayor número de ellas a nuestro país. El legislador no se ha limitado a fomentar el establecimiento de estas plantas industriales. Ha ido más allá y ha hecho extensiva su protección a su funcionamiento para que esa planta pueda funcionar continuamente, teniendo aparatos y accesorios de repuesto.

La ley enumera específicamente, *toda maquinaria, aparato o equipo* esencial para el establecimiento y funcionamiento de plantas industriales. Nótese que la ley usa la palabra "maquinaria", en vez de usar la palabra "máquina". La palabra "maquinaria", como se usa común y ordinariamente, tiene una aplicación más amplia y su significado tiene más alcance y es más abarcador que el del término "máquina". En *Benedict* v. *City of New Orleans*, 11 So. 41, se estableció que:

" 'Maquinaria' se define como las partes de una máquina considerada en conjunto; también como la combinación de medios mecánicos para un fin determinado, tales como la maquinaria de una locomotora, o de una exclusa de un canal, o de un reloj. 'Maquinaria' comprende diferentes implementos mecánicos, y su significado es más extenso que el de 'máquina'."

Y en *Shaleen et al.* v. *Central Coal & Coke Co.*, 192 S. W. 225:

"Parece, sin embargo, que la palabra 'maquinaria' es más abarcadora que la palabra 'máquina' e incluye implementos necesarios para el funcionamiento de una máquina."

Otros casos a este mismo efecto son: *Doty* v. *Oriental Print Works Co.*, 67 A. 586, y *National Enameling & Stamping Co.* v. *Zirkovics*, 251 Fed. 184.

Es claro que al hablar el legislador de "toda maquinaria" esencial para el establecimiento y funcionamiento de plantas industriales, fué su intención el incluir no solamente las máquinas propiamente dichas, si que también las piezas, partes y accesorios de éstas, que son las que constituyen "maquinaria". Si la intención legislativa hubiera sido limitar la aplicación de la exención a las máquinas solamente, fácil le hubiera sido hacerlo constar así claramente expresando que la exención se otorgaba con respecto a "toda máquina", y no con respecto a "toda maquinaria", que es como reza el estatuto que consideramos. Entendemos que las partes, piezas y accesorios de plantas industriales, constituyen "maquinaria", aunque dichas partes estén separadas o hayan sido obtenidas separadamente de la máquina principal.

Además del término "maquinaria", el estatuto incluye los términos "aparato" o "equipo". En 3 Corpus Juris, pág. 252, aparato (*apparatus*) se define como:

"Una palabra genérica con el más comprensivo significado; implementos; un equipo de cosas dispuestas y adaptadas como medios para algún fin; cualquier instrumento complejo o pieza adaptable para una acción u operación específica, de los cuales se dan como ejemplos los instrumentos mecánicos y químicos; . . ."

Y en *The Century Dictionary and Cyclopedia,* Vol. I, aparato (*apparatus*) se define como:

"Un equipo de cosas provistas y adaptadas como medios para algún fin; especialmente una colección, combinación, o juego de maquinaria, herramientas, instrumentos, utensilios, artefactos o materiales dedicados, adaptados y necesarios para la realización de algún propósito, tales como trabajos mecánicos, experimentos, etc. . . . "

Si de acuerdo con las definiciones expuestas, el término "aparato" incluye toda colección, combinación de maquinarias, herramientas, instrumentos, utensilios, accesorios o materiales usados, adaptados y necesarios para conseguir cualquier fin, tal como el funcionamiento de la planta industrial de la interventora, preciso es concluir que las piezas y accesorios en controversia, también estarían incluídos dentro del término "aparato" y por tanto exentos de pago de los arbitrios cobrados por el Tesorero.

Finalmente, vamos a considerar la más importante de las tres palabras incluídas en el estatuto, que es la de "equipo". En el caso de *Laudau* v. *Sykes,* 54 So. 3, habiendo una corporación otorgado una hipoteca sobre todos sus edificios, estructuras, mejoras, maquinarias, etc., haciendo constar que su intención era incluir toda la propiedad de cualquier descripción poseída por la corporación y que constituía parte de su "planta y equipo", la palabra "equipo" se interpretó así:

"La palabra 'equipar' significa hacer las instalaciones necesarias para un servicio, o contra una necesidad de exigencia; preparar; suministrar todo aquello que sea necesario para una acción eficaz en cualquier sentido. Y la palabra 'equipo' significa todo aquello que se use para equipar; . . . la designación colectiva para los artículos comprendidos en una instalación."

La Corte al resolver este caso dijo:

"El establecimiento que la Compañía mantenía para llevar a efecto el negocio a que estaba dedicada, estaba equipado, no solamente con la maquinaria necesaria para la fabricación de aceite y hielo y para desmotar algodón, sí que también con aquellos muebles de oficina que le permitían llevar un récord de sus varias transacciones. Es

necesario llevar libros y hacer muchas otras cosas relacionadas con tales negocios, las cuales sólo se pueden hacer convenientemente manteniendo una oficina equipada con los muebles necesarios. Los artículos en controversia constituyen por lo tanto parte del equipo de la Compañía.''

La palabra ''equipo'' tiene un significado muy amplio que abarca no solamente la máquina propiamente dicha, sino un sinnúmero de otras cosas útiles para el funcionamiento de la planta. Equipo significa aquéllo que es esencial; aquéllo que es necesario, *Eastern Pennsylvania Power Co.* v. *State Board of Taxes and Assessments,* 126 A. 216. En *Old Colony Ins. Co.* v. *Kolmer,* 136 N. E. 51, donde una póliza aseguraba un automóvil contra pérdidas por robo en el motor y equipo, se resolvió que cubría el robo de un rectificador usado para cargar baterías de automóviles por corriente eléctrica; y que la palabra ''equipo'' significa todo aquéllo que es necesario para el funcionamiento y rendimiento de un servicio eficiente. En este caso, el rectificador no estaba dentro del automóvil constantemente, sino que permanecía en un garage, y fué obtenido según alegaba el apelante separadamente del automóvil. La Corte hablando sobre este extremo dijo:

''Es obvio que un aparato no tiene necesariamente que estar unido a o ser llevado sobre o dentro de un automóvil para constituir parte de su equipo...

''La mayoría de los dueños de automóviles llevan un gato de emergencia, cuando van de viaje, para usarlo cuando se vacían las gomas. Ese gato es seguramente una parte del equipo del automóvil. Algunos dueños tienen también otros gatos que guardan en sus garages, con los cuales levantan y sostienen sus automóviles cuando se quedan allí por un tiempo considerable. ¿Puede razonablemente decirse que el primero es un equipo, pero los últimos no, simplemente porque uno es llevado dentro del automóvil mientras que los otros se quedan en el garage? ... Somos claramente de opinión que no puede ser así, pues ello equivaldría a dar demasiada importancia a un hecho relativamente inmaterial.

'' ... No creemos que sea importante el hecho de qué el rectificador no fuera comprado con el automóvil, como una parte de su

equipo, toda vez que un aparato adquirido con posterioridad, si es de tal naturaleza y es usado en forma tal que constituye un equipo, siempre lo sería a pesar del indicado hecho . . ."

Tenemos que concluir que aun cuando aceptáramos que las palabras "maquinaria" y "aparato" no tienen un significado tan amplio que puedan cubrir las piezas y accesorios aquí envueltos, la palabra "equipo" usada en el estatuto los incluye, y por lo tanto están exentos de arbitrios. Consideramos que las piezas y accesorios son esenciales para el establecimiento y funcionamiento de la planta industrial de la interventora puesto que así claramente aparece de las alegaciones.

■ La doctrina de que las exenciones contributivas tienen que ser interpretadas restrictivamente y que las exenciones no se presumen sino que tienen que aparecer consignadas en lenguaje claro y preciso no es aplicable cuando la intención y propósitos legislativos son claros e inequívocos, como lo son en el presente caso. En el caso de *Krause* v. *Peoria Housing Authority*, 19 N. E.2d 193, 370 Ill. 356, la Corte dijo:

" . . . Aun cuando es cierto que los estatutos de exención de contribuciones son interpretados estrictamente en contra de la exención, sin embargo, si la intención de eximir cierta propiedad aparece claramente, debe dársele efecto."

Y en el Vol. I de Mertens *on Law of Federal Income Taxation*, pág. 57, se dice:

"Es importante recordar, desde el principio, que las reglas de interpretación son ayudas para determinar la intención legislativa. Es obvio, por lo tanto, que las reglas no tienen función que desempeñar cuando no existen ambigüedades. Cuando el significado es claro, el estatuto debe ser aplicado tal como aparece escrito."

■ Terminado el análisis del estatuto, creemos que la interpretación dada por el Tesorero y consignada en el artículo 4(e) del Reglamento, supra, es nula por estar en pugna con la Ley núm. 77 de 9 de mayo de 1944. Como hemos ex-

puesto, las piezas y accesorios en cuestión están exentos de arbitrios y el Tesorero de Puerto Rico no puede promulgar un reglamento que imponga contribuciones a cosas que han sido exentas por ley. Consideramos aplicable la regla sentada por la Corte Suprema Federal:

"La facultad de un funcionario administrativo o de una junta para hacer cumplir un estatuto federal y para prescribir reglas y reglamentos para ese fin, no es la facultad de legislar—porque tal facultad no puede ser delegada por el Congreso—sino la facultad de adoptar reglas para llevar a efecto la voluntad del Congreso tal como aparece expresada en el estatuto. Una reglamentación que no hace esto, pero que tiene el efecto de crear una regla que no está en armonía con el estatuto es una mera nulidad. Y para que una reglamentación sea válida, no solamente debe ser consistente con el estatuto, sino también razonable. Además, el estatuto define los derechos del contribuyente y fija la norma (*standard*) por la cual esos derechos deben ser determinados. La reglamentación constituye solamente un paso en el proceso administrativo. No altera ni podría alterar el estatuto." *Manhattan General Equipment Co.* v. *Commissioner*, 297 U.S. 129.

Y en el caso de *Ex Parte Irizarry*, Núm. 441, 66 D.P.R. 672, se expuso:

"Es elemental en derecho que cuando la legislatura delega en una junta o persona poderes para promulgar reglamentos éstos, para ser válidos, no pueden estar en conflicto con las normas establecidas en la ley. *Pueblo* v. *Bou*, 64 D.P.R. 466; *Alemañy* v. *Comisión Industrial*, 64 D.P.R. 888; *Villa* v. *Comisión Industrial*, 65 D.P.R. 562. El fin perseguido al delegar el poder de reglamentación no puede ser otro que el de implementar la ejecución de la ley, pero nunca puede ese poder ejercitarse en tal forma que sustituya el criterio del legislador por el de la junta o persona autorizada a reglamentar."

*La resolución recurrida debe ser confirmada.*
El Juez Asociado Sr. Snyder no intervino.