CERVECERÍA INDIA, INC., peticionaria, *v.* TRIBUNAL DE CONTRIBUCIONES DE PUERTO RICO, demandado; TESORERO DE PUERTO RICO, interventor.

Núm. 235.—*Sometido:* Mayo 4, 1950. *Resuelto:* Mayo 31, 1950.

*J. Alemañy Sosa,* abogado de la peticionaria; *Hon. Procurador General Vicente Géigel Polanco,* y *J. C. Santiago Matos, Procurador General Auxiliar,* abogados del interventor, querellado en el pleito principal.

EL JUEZ ASOCIADO SEÑOR NEGRÓN FERNÁNDEZ emitió la opinión del tribunal.

Expedimos el auto de *certiorari* para revisar la resolución del Tribunal de Contribuciones que declaró sin lugar la querella en este caso, por la que la peticionaria solicitaba devolución de arbitrios pagados bajo protesta en la cantidad de $594.07, que le fueron impuestos por el Tesorero de Puerto Rico sobre material y efectos eléctricos importados de los Estados Unidos en julio de 1947 y agosto de 1948.

Se alegó en la querella que el material y efectos eléctricos de referencia estaban exentos del pago de arbitrios de acuerdo

con lo dispuesto en la sección 16-B de la Ley de Rentas Internas tal como quedó enmendada por la Ley núm. 436 de 14 de mayo de 1947((1) pág. 909),(¹) toda vez que dicho material fué importado "para ser usado como parte del equipo de la maquinaria que la peticionaria estaba instalando en su nueva fábrica de cerveza" y "por constituir el mismo parte de la maquinaria esencial para el establecimiento y funcionamiento de sus plantas industriales en la fase fabril de las mismas." El Tesorero negó que el material eléctrico importado estuviere exento de tributación, toda vez que dicho material no era esencial a la instalación y funcionamiento de las plantas industriales de la querellante en la fase fabril, pues no se utilizaba "en la fase fabril productiva del proceso industrial que interviene con las materias primas desde el comienzo del proceso de su manufactura hasta su terminación", y porque el costo en Puerto Rico por unidad individual del material y efectos importados era menor de $20.

---

(¹) La sección 16-B, tal como quedó enmendada por la Ley núm. 436 de 1947, reza así:

"Sección 16–B.—Estará exento del pago de los arbitrios impuestos por esta Ley todo aparato, maquinaria o equipo que sea esencial para el establecimiento y funcionamiento de plantas industriales; *Disponiéndose*, que se considerarán comprendidas en esta exención las subunidades o fases principales (*major features*) de dichos aparatos, equipo o maquinaria, que sean necesarias para reponer otras subunidades o para ampliar o mejorar el equipo, pero no estarán incluídos las partes, piezas o accesorios de la maquinaria o de la subunidad cuyo 'costo en Puerto Rico' por unidad individual sea menor de veinte (20) dólares; *Disponiéndose, asimismo*, que por subunidad o fase principal (*major feature*) se entenderá aquellas secciones, partes o accesorios sustanciales de la maquinaria o equipo esencial; *Disponiéndose, finalmente*, que por ser ésta una exención que ampara la maquinaria esencial para el establecimiento y funcionamiento de plantas industriales, deberá entenderse aplicable sólo a la maquinaria de la fase fabril productiva del proceso industrial que intervenga con las materias primas desde el comienzo del ·proceso de manufactura hasta su terminación, incluyendo envase y rotulación del producto; pero no amparará la maquinaria, aparatos, equipo, ni vehículos empleados en la fase administrativa o comercial de la industria; *Disponiéndose, sin embargo*, que se considerará amparado por la exención cualquiera maquinaria o equipo que se instale en la planta manufacturera con fines de salubridad de operarios o de prevención de accidentes." En 7 de mayo de 1949, por la Ley 195, la sección 16-B fué nuevamente enmendada. Aunque no variaría el resultado, no es aplicable a este caso.

En su "Relación de hechos aceptados y probados" el Tribunal de Contribuciones consigna, entre otros, los siguientes:

"La demandante es una compañía industrial doméstica que se dedica a la fabricación y venta de cerveza, malta y bebidas gaseosas, con oficinas y centro principal de negocios en Mayagüez.

"En diciembre de 1945, la demandante comenzó la construcción de cuatro edificios en los que instalaría, como instaló, una nueva planta para la manufactura de cerveza y gaseosas, la cual planta se empezó a utilizar allá por agosto de 1948. Dichos edificios consisten de dependencias en las que se fabrica (Blue House), embotella y refrigera (neveras) la cerveza así como las gaseosas.

"En 2 de julio de 1947, dicha demandante importó de los Estados Unidos material eléctrico por valor de $2,234.04 y en 23 de agosto de 1948 importó más material eléctrico, a un costo de $221.25. El material eléctrico importado consistió de alambre núm. 4 y núm. 8, cable, reflectores, cristales para proteger las bombillas, conmutadores, tapas de cajas, 'racks', 'sockets', codos, 'outlets' y demás 'fittings' necesarios para una instalación de fuerza o energía eléctrica.

"...

"El alambre núm. 8 se utilizó para la instalación del alumbrado interior de los edificios de la nueva planta y el alambre núm. 4 que es más grueso y está cubierto con goma, para suplir energía eléctrica a los motores de la nueva maquinaria de la referida planta, así como para suplir fuerza eléctrica a las bombas portátiles que se usan para taladrar y soldar, y para bombear cerveza, existentes en la nueva planta; los reflectores fueron instalados en las neveras donde se conserva la cerveza, para suplir la luz necesaria a esas dependencias; los cristales fueron usados para proteger las bombillas del alumbrado de las neveras contra la baja temperatura existente en esas habitaciones, las cuales bombillas son necesarias para suplir luz para beneficio de las personas que trabajan en tales sitios y para ayudar al empleado a observar el funcionamiento de la maquinaria y a usar los instrumentos necesarios para poder manejar el equipo eficientemente. Los conmutadores se usan para dar luz a las bombillas instaladas en los tanques de la cerveza en los cuartos destinados a neveras y en el 'Blue House', que es el sitio donde se cocina o se hace la cerveza que luego se pasa a las neveras. Los 'racks',

que son artefactos de acero en donde descansan los cables, se utilizaron para soportar el peso de los cables que llevan energía eléctrica a los motores, y las tapas se usaron para tapar las cajas o piezas de metal que se empotran en las paredes para facilitar la instalación de los alambres, especialmente en aquellos sitios de las paredes donde hay que formar curvas.

"En resumen, todo el material importado se utilizó para el alumbrado de los nuevos edificios y para suplir energía eléctrica a los motores de la nueva maquinaria instalada en los mismos. En otras palabras, todo dicho material se utilizó en la nueva planta industrial para suplirla del equipo eléctrico necesario para alumbrar y mover dicha maquinaria, no habiéndose usado parte alguna de ese material para el alumbrado de oficinas u otras dependencias ajenas a la fase fabril de la industria."

También dió por establecido el hecho de que el costo en Puerto Rico del material o efectos eléctricos importados, nunca fué mayor de $20 por unidad o pieza, resolviendo que por tal circunstancia la contribuyente no tenía derecho a la exención reclamada bajo la sección 16-B, según quedó enmendada por la Ley núm. 436 de 14 de mayo de 1947, ya que ésta expresamente excluía de dicha exención toda unidad individual cuyo costo en Puerto Rico fuera menor de la indicada cantidad.

Sostiene la peticionaria que tratándose en su caso de material y efectos eléctricos esenciales para la instalación o establecimiento de su nueva planta industrial, indispensables para poder mover la nueva maquinaria instalada, y no de sustituir, ampliar o mejorar el equipo de una planta existente, la limitación que impone la enmienda de 14 de mayo de 1947 con relación a la exención de partes, piezas y accesorios, no opera en contra suya, pues toda la maquinaria, aparatos o equipo[2] que sean esenciales para el *establecimiento* de plantas industriales (tan sólo de la fase fabril productiva del proceso industrial) están exentas de tributación, estando

---

[2] En cuanto al alcance del término "equipo", *Buscaglia, Tes.* v. *Tribl. de Contribuciones,* 67 D.P.R. 57; *Cf. Descartes, Tes.* v. *Tribunal de Contribuciones,* ante, pág. 471.

la limitación dirigida a excluir partes, piezas y accesorios necesarios en la reposición, ampliación o mejora del equipo.

El interventor sostiene que la limitación impuesta por la enmienda de 14 de mayo de 1947 en cuanto al costo por unidad individual cubre no solamente las piezas y accesorios necesarios para reparar, sino también las piezas y accesorios de la maquinaria principal.

La sección 16-B, según fué agregada a la Ley de Rentas Internas por la Ley núm. 77 de 9 de mayo de 1944, disponía:

"Sección 16-B.—Estarán exentos del pago de los arbitrios impuestos por esta Ley toda maquinaria, aparato o equipo que sea esencial para el establecimiento y funcionamiento de plantas industriales. *Disponiéndose,* que el Tesorero de Puerto Rico dictará los reglamentos que fueren necesarios para dar cumplimiento a las disposiciones de esta sección."

Interpretando dicha sección este Tribunal resolvió en *Buscaglia, Tes.* v. *Tribl. de Contribuciones,* 67 D.P.R. 57, que al eximir de contribuciones a toda maquinaria esencial para el establecimiento y funcionamiento de plantas industriales a tenor con la misma, la intención legislativa fué incluir no solamente las máquinas propiamente dichas si que también las piezas, partes y accesorios de éstas. En parte así se expresó este Tribunal en dicho caso:

"Tenemos ante nos, otra Ley de exención contributiva, la núm. 77 de 1944. Esta ley exime del pago de arbitrios 'toda maquinaria, aparato o equipo que sea esencial para el establecimiento y funcionamiento de plantas industriales.' Esta nueva ley, también persigue el propósito de estimular y fomentar el establecimiento de plantas industriales en Puerto Rico. La intención legislativa, se desprende del claro lenguaje del estatuto. No puede ser otra sino la de librar lo más posible a las plantas industriales de cargas contributivas, para así atraer el mayor número de ellas a nuestro país. El legislador no se ha limitado a fomentar el *establecimiento* de estas plantas industriales. *Ha ido más allá y ha hecho extensiva su protección a su funcionamiento para que esa planta pueda funcionar continuamente, teniendo aparatos y accesorios de repuesto.*" (Bastardillas nuestras.)

Fué, según dijimos en *Central Coloso* v. *Tribl. de Contribuciones*, 70 D.P.R. 65, para "hacer frente a la situación creada por nuestra decisión en el caso de *Buscaglia, Tes.* v. *Tribunal de Contribuciones*, 67 D.P.R. 57, en lo referente a partes y accesorios. . ." que se aprobó primordialmente la Ley núm. 436 antes citada, y claramente la limitación de $20 al costo en Puerto Rico por unidad individual de las partes, piezas o accesorios, se refiere a la materia que inmediatamente precede tal limitación, contenida en el primer *Disponiéndose* de la sección 16-B, según fué enmendada por la Ley núm. 436, o sea a la exención de las fases principales (*major features*) de los aparatos, maquinaria o equipo necesarios para *reponer, ampliar* o *mejorar* el equipo, mas no a la instalación original de aparato, maquinaria o equipo esencial para el *establecimiento* de una planta industrial, relativa a la fase fabril de la industria. Siendo ello así, y consignando el tribunal inferior en su "Relación de hechos probados y aceptados," (³) que todo el material y efectos eléctricos importados por la peticionaria se utilizaron en su nueva planta industrial para suplirla del equipo eléctrico necesario para mover la maquinaria de la fase fabril, productiva del proceso de elaboración de cerveza, ésta tiene derecho a la exención reclamada.

*Procede revocar la resolución recurrida y declarar con lugar la querella.*

El Juez Asociado Sr. Snyder no intervino.

---

(³) No obstante, en su opinión el tribunal inferior, al resolver que el material eléctrico estaba excluído de la exención por ser el costo en Puerto Rico, por unidad individual, menor de $20, se expresó así:

"Asumiendo, aunque sin resolverlo por no ser necesario en este caso, que el material eléctrico que importó e instaló la demandante en su nueva unidad de operación forma parte de la maquinaria o equipo esencial para el establecimiento y funcionamiento de dicha planta industrial en la fase fabril de la misma, así como que dichos efectos eléctricos constituyen partes, piezas o accesorios de la maquinaria o del equipo, dicho material, por ser su costo en Puerto Rico menor de $20 por unidad individual, está excluído de la exención y por consiguiente el mismo estaba y está sujeto al arbitrio que le fijara el querellado, siendo la demandante responsable de su pago."