El Pueblo de Puerto Rico, demandante y apelado, *v.* Roque Martínez Baz, acusado y apelante.

Núm. 10045.—*Sometido:* Diciembre 20, 1943. *Resuelto:* Enero 12, 1944.

*Géigel & Silva,* abogados del apelante; *R. A. Gómez, Fiscal del Tribunal Supremo y Luis Negrón Fernández, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

El apelante fué convicto y sentenciado por infracción a la Ley núm. 6 de 17 de noviembre de 1941 (Primera Sesión Extraordinaria, pág. 15). Consistió la. infracción en que el 4 de marzo de 1942, siendo el apelante un comerciante mayorista, ilegal, voluntaria y maliciosamente vendió al comerciante detallista Luis Antonio Ruiz cinco quintales de arroz a un precio más alto que el fijado por la Comisión de Alimentos y Abastecimiento General.

El apelante no controvierte los hechos que se le imputan, pero alega que debemos revocar la sentencia:

(1) Porque la ley que se alega infringida es nula por contener una delegación inconstitucional de poderes.

(2) Porque la corte inferior actuó sin jurisdicción al sentenciarlo toda vez que la denuncia no expresa que el precio convenido por la referida Comisión hubiese sido previamente aprobado por el Secretario de Agricultura de los Estados Unidos, y

(3) Porque cualquier determinación que válidamente hubiese podido hacerse por la Comisión en cuanto al precio de venta del arroz, que es un producto agrícola, dejó de tener efecto y validez el 30 de enero de 1942 al comenzar a regir

la Ley del Congreso de los Estados Unidos titulada "Emergency Price Control Act of 1942".

■■ I. *¿Contiene la ley impugnada una delegación inconstitucional de poderes?*

El artículo 1 de la Ley núm. 6 de 1941, luego de crear la Comisión de Alimentos y Abastecimiento General prescribe que la Comisión declarará con la aprobación del Gobernador los artículos que habrán de considerarse *de necesidad.* Más adelante, en el inciso 4 del mismo artículo 1, le confiere poder, sujeto a la aprobación del Gobernador, para determinar los precios a que podrán venderse los *artículos de necesidad* por personas particulares y prescribe la pena en que incurrirán las personas que vendan esos artículos a un tipo más alto que el determinado por la Comisión, o en cantidades o a personas prohibidas por la Comisión. Así pues, los poderes de la Comisión están circunscritos a los *artículos de necesidad.*

Arguye el apelante que en ninguna parte de la ley se define directa o indirectamente la frase *artículos de necesidad;* que la legislatura no fijó ninguna norma o pauta para guiar a la Comisión en la determinación de los artículos que habrán de considerarse de necesidad, y como la ley no contiene limitación alguna a ese efecto, puede la Comisión actuar arbitraria y caprichosamente al hacer la determinación. Alega también el apelante que la frase *artículos de necesidad* es completamente vaga e indeterminada y está sujeta a distintas interpretaciones de acuerdo con las inclinaciones y gustos de las distintas personas llamadas a interpretarla.

Concedemos que la ley no define expresamente la frase *artículos de necesidad,* pero de su contexto y de su "Declaración de Principios" es evidente que dicha frase está circunscrita a artículos alimenticios de primera necesidad. La "Declaración de Principios" dice:

"Es la política de esta Ley hacer frente a la inflación y especulación en los precios de *los artículos para el sustento de los habitantes de Puerto Rico,* debidas a las actuales condiciones mundiales, al

programa de defensa nacional de los Estados Unidos, y a la emergencia proclamada por el Presidente, mediante el establecimiento de una agencia gubernamental que sirva y actúe como factor estabilizador en el mercado local para proteger al pueblo de la miseria económica.'' (Bastardillas nuestras.)

Y del artículo 1 de la Ley tomamos los siguientes párrafos demostrativos de que la frase *artículos de necesidad,* conforme se usa en la ley, significa artículos alimenticios de primera necesidad:

''La Comisión hará estudios de las necesidades del pueblo de Puerto Rico *en materia de alimentación,* de los jornales prevalecientes, del poder adquisitivo en general, y del costo de los artículos de necesidad.

''    *    *    *    *    *    *    *

''Teniendo en cuenta los jornales y sueldos prevalecientes, el poder adquisitivo en general, y el costo de los artículos de necesidad, la comisión tendrá los siguientes poderes:

''1. Podrá comprar aquellos artículos *que sean necesarios para el sustento de los habitantes de Puerto Rico.*

''    *    *    *    *    *    *    *

''9. Tendrá poder para tomar cualesquiera medidas que estime necesarias en relación *con la siembra y cultivo de productos alimenticios* para usarse durante el período de la actual emergencia y por el tiempo subsiguiente que fuere necesario, incluyendo el poder de comprar semillas y raíces y sembrarlas y cultivarlas en terrenos pertenecientes a El Pueblo de Puerto Rico o a cualquier municipio del mismo, para arrendar o expropiar las tierras de personas particulares con el fin y por el período de tiempo que fuere necesario, siempre que el uso de dichas tierras particulares no pueda obtenerse de algún otro modo. Tendrá poder para distribuir los productos de las mismas en la forma dispuesta para los artículos comprados por ella.

''10. Tendrá poder para organizar y dirigir cooperativas de producción de productos *de primera* necesidad, así como cooperativas de consumo que funcionen en coordinación con las cooperativas de producción.'' . (Bastardillas nuestras.)

La jurisprudencia no requiere, para que la delegación de poder sea constitucional, que la norma se exprese con precisión o exactitud matemática. La mayor o menor amplitud en el lenguaje dependerá del grado de complejidad de la

materia que deba ser reglamentada. A menos que la norma no se exprese, o que sea tan sumamente vaga que como cuestión de hecho la norma no exista, la presunción de constitucionalidad que conlleva toda ley bastaría para sostener su validez. Por ejemplo, en el caso de *National Broadcasting Co. et al.* v. *United States et al.* (Mayo, 1943) 319 U.S. 190, se atacó la constitucionalidad del estatuto federal titulado "Communications Act of 1934", alegándose que contenía una delegación inconstitucional de poderes. Los poderes de la Federal Communications Commission se exponían en la sección 303 de la ley en los siguientes términos:

"Excepto como de otro modo se provee en esta ley, la Comisión de tiempo en tiempo, conforme lo requieran la conveniencia, el interés o las necesidades públicas,

"(*a*) clasificará estaciones de radio;

"(*b*) prescribirá la naturaleza del servicio que deberá ser prestado por cada clase de estaciones autorizadas y por cada estación de cualquier clase; . . .

"  *       *       *       *       *       *       *

"(*f*) hará aquellos reglamentos no inconsistentes con la ley que puedan estimarse necesarios para impedir interferencias entre estaciones y para llevar a efecto las disposiciones de esta Ley; . . .

"(*g*) estudiará nuevos usos del radio, proveerá para usos experimentales de frecuencias, y en general estimulará el uso mayor y más efectivo del radio en beneficio del interés público;

"  *       *       *       *       *       *       *

"(*i*) tendrá autoridad para hacer reglamentos aplicables a estaciones de radio dedicadas a transmisiones en cadena;

"  *       *       *       *       *       *       *

"(*r*) dictará reglas y reglamentos, y prescribirá restricciones y condiciones no inconsistentes con la ley, que puedan ser necesarias para llevar a cabo las disposiciones de esta Ley . . ."

La Corte Suprema de los Estados Unidos, por voz de su Juez Asociado Sr. Frankfurter, al declarar dichas normas suficientes a los efectos de la delegación de poder, dijo:

"El criterio que rige el ejercicio del poder de la Comisión para expedir licencias es 'el interés público, la conveniencia o la necesidad.' Secciones 307 (*a*) (*d*), 309 (*a*), 310, 312."

Y más adelante se dice:

"La Comisión, sin embargo, no fué dejada sin restricciones en la ejecución de este deber. La piedra de toque provista por el Congreso fué 'el interés público, la conveniencia o la necesidad,' norma tan concreta como lo puedan permitir los complicados factores para dictaminar en ese campo de autoridad delegada."

Y en el caso de *McGrew* v. *Industrial Comm.* (Utah, 1938) 85 P. (2d) 608, citado con aprobación en el de *Luce & Co.* v. *Junta de Salario Mínimo,* 62 D.P.R. 452, 467, la norma establecida por la legislatura de Utah en relación con una ley de horas y salarios para mujeres y menores empleados en negocios al *detall,* era que los salarios pagados en la industria *no fuesen inadecuados para suplir el coste de una vida apropiada o que las horas de trabajo no fuesen perjudiciales a la salud, a la moral o al bienestar de los trabajadores.* La suficiencia de la norma fué sostenida. Se dijo entre otras cosas que la norma no tiene que ser expresada con exactitud matemática o en tal forma que no pueda llegarse a más de una conclusión.

El hecho de que en la ley que nos ocupa se use la frase *artículos de necesidad* y no *de primera necesidad,* como se usó posteriormente en la Ley núm. 228 de 12 de mayo de 1942 ((1) pág. 1269), que crea la Administración General de Suministros y que derogó la ley de 17 de noviembre de 1941 no significa que la norma establecida en la ley derogada fuera insuficiente. Si como sucedió en el presente caso, trató de atacarse la validez de la ley por la insuficiencia de la norma, era prudente que la legislatura tratase de evitar la objeción al aprobar la nueva ley.

■■ II y III. *Efecto del estatuto federal titulado Emergency Price Control Act of 1942 sobre la Ley insular creando la Comisión de Alimentos y Abastecimiento General.*

Iniciaremos la discusión del segundo y tercer señalamientos de error reproduciendo lo que sobre esta materia

dijimos en el caso de *Luce & Co.* v. *Junta de Salario Mínimo,* supra:

"Para que pueda sostenerse que un estatuto federal excluye una ley insular encaminada a proteger la salud y el bienestar del público, no basta que las dos leyes abarquen la misma materia. Es preciso que la insular por sus propios términos o en su administración práctica esté en conflicto con la ley del Congreso o manifiestamente infrinja la política pública de la ley federal."

En el presente caso el delito fué cometido el 4 de marzo de 1942. Es verdad que el estatuto federal titulado "Emergency Price Control Act of 1942" fué aprobado el 30 de enero de 1942. También es verdad que el estatuto federal por sus propios términos es aplicable a Puerto Rico y que su sección 945 expresamente dispone que ninguna ley en vigor el 30 de enero de 1942 deberá interpretarse en el sentido de autorizar acción alguna inconsistente con las disposiciones de la citada ley federal. Pero no es menos cierto que aunque el Emergency Price Control Act de 1942 empezó a regir el 30 de enero de 1942, el reglamento aprobado por la Office of Price Administration fijando precios de conformidad con la autoridad conferídale por la sección 901 de la citada ley no empezó a regir hasta el 18 de mayo de 1942, y como dicho reglamento no tiene efecto retroactivo y por consiguiente se aplica solamente a ventas efectuadas después de su aprobación, es evidente que el 4 de marzo de 1942, fecha en que se cometió el delito en este caso, no podía existir conflicto alguno entre la ley federal y la insular. *Schreirer* v. *Siegel* (1942) 36 N.Y.S. (2d) 97, 178 Misc. 711. Estando entonces la ley insular en toda su fuerza y vigor, no era necesario que en la denuncia se alegase que el precio que la Comisión de Alimentos y Abastecimiento General había fijado para arroz había sido previamente aprobado por el Secretario de Agricultura de los Estados Unidos.

*Se confirma la sentencia apelada.*

El Juez Asociado Sr. Snyder no intervino.