*Ex Parte* Monserrate Irizarry Marrero, peticionario.

Núm. 441.—*Sometido:* Noviembre 18, 1946. *Resuelto:* Noviembre 21, 1946.

*Oscar Souffront, Enrique Alcaraz Casablanca* y *Enrique Báez García*, abogados del peticionario; *Hon. Procurador General Interino Luis Negrón Fernández*, abogado de El Pueblo; *Córdova & González*, abogados de la Federación del Comercio de Puerto Rico, como *amicus curiae*.

El Juez Asociado Señor Todd, Jr., emitió la opinión del tribunal.

Expedimos el auto de hábeas corpus en este caso para determinar si, como alega el peticionario, Monserrate Irizarry Marrero, su detención es ilegal[1] por no constitur delito los hechos bajo los cuales fué acusado y sentenciado a cumplir tres meses de cárcel y a pagar una multa de $15.

La acusación formulada por el Fiscal de la Corte de Distrito de Mayagüez, en lo pertinente, dice así: ". . . el referido acusado, quien es y era un comerciante detallista, con su establecimiento comercial abierto al público en la calle Vileya, barrio Mineral en el pueblo de Mayagüez, P. R., ilegal, voluntaria y maliciosamente y a sabiendas que violaba la ley núm. 228, aprobada por la Asamblea Legislativa de Puerto Rico en 12 de mayo de 1942, enmendada por la ley núm. 493, aprobada por la Asamblea Legislativa de Puerto Rico en 29 de abril de 1946, en relación con la Orden Administrativa núm. 8, promulgada por el Administrador General de Suministros el día 8 de septiembre de 1942, (tal como ha sido enmendada y ampliada) al amparo de la ley núm. 228, aprobada por la Asamblea Legislativa en 12 de mayo de 1942, enmendada por la ley núm. 493, aprobada por la Asamblea Legislativa de Puerto Rico en 29 de abril de 1946 y la cual tiene fuerza de ley por haber sido promulgada y publicada de acuerdo con la ley en el periódico El Mundo el día 8 de septiembre de 1942 y el día 31 de julio de 1946, rehusó vender a Américo Romero Castillo una cuarta de libra de manteca, a pesar de que el acusado tenía suficiente cantidad

---

[1] La sección 1 de la Ley de Hábeas Corpus (sección 469 del Código de Enjuiciamiento Criminal) dispone que: "Cualquiera persona que por cualquier pretexto sea encarcelada o ilegalmente privada de su libertad, puede solicitar un auto de *habeas corpus* a fin de que se investigue la causa de dicha prisión." Y el artículo 5 del Código Penal dispone que: "Ninguna persona será arrestada por crimen o delito alguno, que no estuviere expresamente declarado como tal en este Código, excepto por crímenes o delitos contra las leyes de los Estados Unidos aplicables en Puerto Rico, las decretadas por la Asamblea Legislativa de Puerto Rico y por el Congreso de los Estados Unidos, para Puerto Rico."

de dicho artículo en existencia y de que se le ofreció en pago de dicha cantidad el precio legal en el mercado.''

La Ley núm. 228 de 1942,([2]) creadora de la Administración General de Suministros (Leyes de 1942, (1) pág. 1269), según enmendada por la núm. 493 de 1946 (pág. 1475) en su artículo 10(*b*) dispone en parte, que: ''. . . *Nada en esta Ley se intepretará en el sentido de obligar a persona alguna a vender artículos de primera necesidad;* Disponiéndose, sin embargo, que en aquellos casos en que algún comerciante o negociante tenga existencias de productos de primera necesidad y se niegue a venderlas al público por no querer cumplir con las escalas de precios o alguna otra disposición de esta Ley (cornering), el Administrador podrá hacer uso, con referencia a esas existencias, *del poder de incautación que le confiere esta Ley.*'' (Bastardillas nuestras.)

Por su artículo 2(*c*) se concede la facultad al Administrador General de Suministros para ''. . . de tiempo en tiempo, dictar aquellas reglas y órdenes que crea necesarias

---

([2]) Los fines de esta ley están expresados en su título el cual, en lo pertinente, dice así:

''Para crear una Administración General de Suministros y el cargo de Administrador General de Suministros; para fijar sus facultades, deberes y compensación; para promover la seguridad colectiva mediante la estabilización de precios; para evitar la inflación, el alza desmedida de precios, los desajustes económicos y las prácticas especulativas; para abaratar en todo lo posible el coste de productos de primera necesidad a los habitantes de Puerto Rico; para proveer para la compra, almacenamiento, transportación y disposición de adecuadas existencias de artículos de primera necesidad; para determinar a qué personas y en qué cantidades podrán venderse artículos de primera necesidad; para prohibir violaciones a las reglas u órdenes o escalas de precios promulgados bajo esta ley; castigar las violaciones a las reglas u órdenes o a las escalas de precios dictadas bajo esta ley; para prohibir e impedir la práctica de abstenerse de vender artículos de primera necesidad con el fin de evadir la ley (*cornering*); para autorizar al Administrador General de Suministros a conceder préstamos y establecer cooperativas de producción y de consumo para artículos de primera necesidad, establecer un plan de siembras de dichos artículos, y para crear y administrar establecimientos para la venta al por mayor y al por menor de artículos de primera necesidad; para establecer el procedimiento para la reconsideración de las reglas, órdenes y escalas de precios fijados por el Administrador; para crear la Corte de Apelación de Suministros, fijar su jurisdicción y determinar sus poderes; para disponer los medios para el cumplimiento de esta Ley; para establecer un sistema de licencias; . . .''

para poner en vigor las disposiciones de esta Ley,'' y el artículo 3(c) dispone que ''Cuando en el criterio del Administrador sea necesario y propio para poner en efecto los propósitos de esta Ley, podrá reglamentar mediante regla u orden, y podrá prohibir, prácticas especulativas o de manipulación, incluyendo prácticas relativas a cambios en la forma o calidad de un artículo, o el acaparamiento de algún artículo de primera necesidad que, en su criterio, equivalgan o propenden al alza de los precios inconsistentes con los propósitos de esta Ley,'' y el inciso (e) de este artículo 3 dispone que ''Las órdenes, reglas y reglamentos dictados bajo esta Ley podrán contener todas aquellas disposiciones que el Administrador crea necesarias para evitar la evasión de los mismos.''

Pretendiendo actuar bajo el poder concedídole por la ley el Administrador General de Suministros aprobó el 3 de agosto de 1946 la Orden Administrativa núm. 88 enmendando la Orden núm. 8 de 8 de septiembre de 1942, que dispone lo siguiente:

''La orden administrativa número 8 de septiembre 8 de 1942, cuya disposición quinta prohibe 'Negarse a vender un artículo que tenga en existencias', se entenderá enmendada para que lea como sigue:

'' 'Queda prohibido negarse a vender un artículo que se tenga en existencias, *Disponiéndose,* que cuando se trate de artículos racionados el detallista se guiará para la distribución por la lista de sus clientes o por el racionamiento oficial que pueda estar en vigor, *Disponiéndose, además,* que cuando un detallista considere que un consumidor quiere hacer compras de acaparamiento, podrá rehusarlas, debiendo sin embargo notificar de ello inmediatamente a la Junta Local de Administración General de Suministros o a cualquier delegado del Administrador.' ''

Ya había dispuesto el Administrador en la Orden núm. 8, supra, que la violación de alguna de sus disposiciones sería castigada por cada ofensa con multa no menor de cinco mil

dólares y cárcel por no menos de tres meses ni más de dos años.

La violación de esta orden es la que se imputa en la acusación radicada contra el aquí peticionario como constitutiva de una infracción de la Ley núm. 228.

 Es elemental en derecho que cuando la legislatura delega en una junta o persona poderes para promulgar reglamentos éstos, para ser válidos, no pueden estar en conflicto con las normas establecidas en la ley. *Pueblo* v. *Bou,* 64 D.P.R. 466; *Alemañy* v. *Comisión Industrial,* 64 D.P.R. 888, y casos en él citados; *Villa* v. *Comisión Industrial,* 65 D.P.R. 562. El fin perseguido al delegar el poder de reglamentación no puede ser otro que el de implementar la ejecución de la ley pero nunca puede ese poder ejercitarse en tal forma que sustituya el criterio del legislador por el de la junta o persona autorizada a reglamentar. Y menos aún puede junta o persona alguna, a virtud del poder de reglamentación concedídole por la legislatura, crear un delito que la propia Legislatura no estatuyó.

La sección 10(*b*) de la Ley núm. 228, supra, es tan clara en su redacción que no se presta a ninguna otra interpretación que la que sus propias palabras significan en el lenguaje corriente que usa. Cuando el legislador dijo ''Nada en esta Ley se interpretará en el sentido de obligar a persona alguna a vender artículos de primera necesidad'' quiso decir exactamente lo que tenía que decir para que la ley fuera válida. Constitucionalmente(³) no podía la legislatura obligar a nadie a dedicarse al comercio. Podía eso sí, autorizar al Administrador General de Suministros a reglamentar el comercio de artículos de primera necesidad en forma razonable de acuerdo con la situación de emergencia que existía

_____

(³) El inciso (*d*) de la sección 4 de la Ley federal ''Emergency Price Control Act'' de 1942, de la cual se copiaron casi sustancialmente las disposiciones de la Ley 228, supra, dispone, al igual que la nuestra, que ''Nada en esta Ley se interpretará en el sentido de obligar a persona alguna a vender cualquier artículo o a ofrecer cualquier alojamiento en alquiler.''

y existe, y eso fué lo que hizo al conferir al Administrador General de Suministros el poder de incautarse de los productos de primera necesidad que el comerciante se negare a vender al público. Empero, en el caso de autos, el Administrador General de Suministros fué más allá y, sin autoridad en ley, creó un delito basado en hechos que la legislatura no sólo no autorizó sino que expresa y claramente dispuso que no se debía interpretar la ley en el sentido de obligar a persona alguna a vender artículos de primera necesidad.

El Procurador General interino antes de allanarse a la petición en este caso, y con el fin de que conociéramos el criterio jurídico de la corte inferior sobre la cuestión envuelta, sometió a la corte copia certificada de la vista celebrada ante la corte inferior al irse a dictar sentencia en el caso de El Pueblo v. Francisco Durán y José Durán en el que se imputaba a los acusados el mismo delito que en el de autos. A requerimiento del Procurador General interino el Fiscal de la Corte de Distrito de Mayagüez solicitó el archivo de dicho caso (⁴) por el fundamento de que de acuerdo con el artículo 10(*b*) de la Ley núm. 228 de 1942, supra, ningún comerciante está obligado a vender artículos de primera necesidad a nadie.

Sostuvo la corte inferior que el artículo 10(*b*) de la ley no es aplicable a comerciantes de artículos de primera necesidad a quien el Administrador General de Suministros había concedido una licencia de acuerdo con el artículo 13(*c*) de la ley para dedicarse a la venta de dichos artículos y que,

---

(⁴)Actuación del Procurador General autorizada por ley ya que los fiscales no son otra cosa que delegados del Procurador General y si bien de acuerdo con el artículo 64 del Código Político, los procesos criminales serán promovidos por el fiscal del respectivo tribunal sin especial autorización del Procurador General "en todos estos casos el Procurador General podrá intervenir en interés del público." Y si el Procurador General se convence de que no constituye delito determinada alegada violación no sólo puede sino que debe así informarlo a la corte, no estando ésta obligada, desde luego, a aceptar tal criterio, pero tampoco está autorizada a calificar de "atrevimiento" la actuacón del Procurador General al instruir a un fiscal para que pida el archivo de un caso por dicho motivo.

por el contrario, sólo se aplica a aquellos comerciantes que no hayan obtenido dicha licencia. Esta interpretación del artículo 13(c) de la ley es errónea ya que el mismo lo que provee, en cuanto a la cuestión aquí envuelta, es que el Administrador podrá "requerir a todas las personas sujetas a alguna regla u orden o escala de precios, emitida bajo esta Ley, la obtención de una licencia expedida por el mismo Administrador como condición previa indispensable para que dicha persona pueda dedicarse a la venta o a cualquier aspecto del negocio referente a algún artículo de primera necesidad. . .". Después de exceptuar de este requisito a los agricultores productores que se dediquen a la venta de sus propios productos agrícolas, dispone este inciso que "Ninguna persona natural o jurídica podrá dedicarse a los referidos negocios sin la previa obtención de la mencionada licencia, . . ." y se provee una pena adicional para toda violación de dicha disposición. El resto del inciso se refiere a los motivos para la suspensión de las licencias por "(1) Violación de alguna escala de precios. (2) Violación de las órdenes del Administrador dictadas bajo sus prerrogativas legales. (3) Violación de alguna disposición de esta Ley que conlleve una penalidad criminal." Luego se establece el procedimiento a seguirse ante la Corte de Distrito para obtener dicha suspensión disponiéndose que la orden de la corte suspendiéndola no será apelable pero si se deniega la suspensión el Administrador podrá apelar al Tribunal Supremo. Termina el inciso disponiendo, además, "que el Administrador podrá ejercitar el derecho de incautación conferídole por esta Ley sobre las existencias de productos de primera necesidad, propiedad de la persona sujeta a la orden de suspensión."

Como puede verse el legislador expuso su intención de que el Administrador *podrá* exigir la obtención de una licencia de toda persona sujeta a alguna regla u orden o escala de precios como condición previa indispensable para

que dicha persona pueda dedicarse a *la venta* o a cualquier aspecto del negocio referente a algún artículo de primera necesidad pero más adelante dispuso que ninguna persona natural o jurídica podrá dedicarse a dichos negocios "sin la previa obtención de la mencionada licencia." En otras palabras para poder vender artículos de primera necesidad es requisito indispensable obtener la licencia expedida por el Administrador. Esto lo admite la propia corte inferior en su resolución al decir que el Administrador General de Suministros por la Orden núm. 82 "consideró bajo licencia para traficar en artículos de primera necesidad *a todo el comercio establecido en tales artículos.*" (Bastardillas nuestras.) Pero esto no obstante resolvió más adelante dicha corte que: "Hay dos clases de comerciantes: comerciantes que tienen licencia para vender artículos de primera necesidad, y *comerciantes que no están licenciados para vender artículos de primera necesidad.*" (Bastardillas nuestras.) La contradicción es obvia y basada en ella es que sostuvo la corte inferior que es a los comerciantes *"No licenciados"* a los que debe aplicarse el artículo 10(*b*) de la ley. Es decir, que únicamente los comerciantes "no licenciados" son los que pueden negarse a vender artículos de primera necesidad y de cuyas existencias el Administrador puede incautarse, pero que los comerciantes licenciados no pueden negarse a vender y si lo hacen pueden ser procesados.

No podemos aceptar esta interpretación primero, porque la ley no dispone tal cosa y si así la interpretáramos conllevaría su nulidad, y segundo, porque si lo dispusiera también sería nula pues como hemos dicho antes, constitucionalmente no podrá obligarse a una persona, natural o jurídica, a dedicarse al negocio de compraventa de artículos de primera necesidad o de cualquier otra clase, aunque sí puede reglamentarse la forma y precios a que ha de vender artículos de primera necesidad durante un período de emergencia.

Como bien dijo en la vista oral de este caso el abogado de la Federación de Comercio de Puerto Rico, la disposición del artículo 10($b$) de nuestra ley, aunque similar a la contenida en la sección 4($d$) de la ley federal, es independiente de todo requisito de licencia contenido en ambas leyes. Y lo demuestra el hecho de que la sección 4($d$) de la ley federal no sólo dispone que no se obligará a ninguna persona a vender cualquier artículo sino que, como dicha ley es extensiva a los precios de alquileres residenciales también dispone que tampoco se interpretará "para obligar a ninguna persona a ofrecer cualquier alojamiento en alquiler". Como para dedicarse al alquiler de viviendas no es requisito licencia de clase alguna, es obvio que las disposiciones referentes a licencia son independientes y nada tienen que ver con las disposiciones del artículo 10($b$) o de la sección 4($d$) supra.

Sostuvo, además, la corte inferior que al interpretar y aplicar el artículo 10($b$) debía hacerse en armonía con los artículos 3($f$), 9($f$), 10($a$) y 12($c$) de la ley. Veamos.

El artículo 3($f$) se limita a autorizar al Administrador a . . . "prohibir, mediante regla u orden, el transporte, recibo, almacenamiento o venta en Puerto Rico de artículos que *no sean* de primera necesidad; o . . . determinar . . . las cantidades que en cualquier período de tiempo puedan ser transportadas, recibidas, almacenadas o vendidas de *dichos* artículos, y podrá establecerse un sistema de licencias para . . . *dichos* artículos."

No vemos qué pertinencia ni aplicabilidad pueda tener este inciso al problema que discutimos ya que se refiere exclusivamente a artículos que *no sean* de primera necesidad y aun en cuanto a ellos tampoco se autoriza al Administrador a obligar a nadie a venderlos.

En cuanto al artículo 9($f$) no encontramos que dicho artículo 9 tenga tal inciso ($f$).

El artículo 3($a$) se refiere al poder concedido al Administrador para fijar precios máximos o beneficios máximos y

para establecer escalas de precios mínimos y de beneficios mínimos en cuanto a los artículos de primera necesidad y establece el procedimiento que debe seguir el Administrador para hacerlo. Tampoco vemos pertinencia alguna en este inciso a la cuestión en controversia y menos aún en el artículo 12(c) que se refiere exclusivamente a la creación de la Corte de Apelación de Suministros a que se hace referencia en los incisos (a) y (b) del mismo artículo.(5)

Hemos estudiado y analizado todos los fundamentos expuestos por la corte inferior para sostener su criterio de que constituye un delito público el que un comerciánte se niegue a vender artículos de primera necesidad. Ninguno tiene justificación legal alguna. En la interpretación y aplicación de la sección 4(d) de la ley federal, equivalente al artículo 10(b) de nuestra ley, no hemos podido encontrar caso alguno que resuelva que constituye un delito el negarse a vender artículos de primera necesidad. Difícilmente podría existir tal caso cuando la expresión de la intención legislativa es tan clara y terminante. Por el contrario, en el caso de *Buckeye Parking Corporation* v. *Boles,* 141 F.2d 692, la corporación demandante que se dedicaba al alquiler de sitios para estacionar automóviles (*parking lots*) al serle rechazada por el Administrador un cambio en las tarifas por horas que cobraba por dicho servicio alegó ante la Corte Apelativa de Emergencia federal que dicho rechazo equivalía a obligar a la demandante a vender su servicio por una hora y que esto constituía una violación de la sección 4(d) de la Ley. La Corte dijo: ''La contestación a esta contención es obviamente que el Administrador no está interviniendo *con el derecho de la demandante de descontinuar su servicio por una hora. Ella puede descontinuar ese servicio si lo desea,*

---

(5)Como hemos visto aun para obtener la suspensión de una licencia expedida por el Administrador viene éste obligado a recurrir ante esta Corte y ninguno de los motivos especificados en el artículo para obtener dicha suspensión incluye el de haberse negado un comerciante a vender artículos de primera necesidad.

pero no puede inaugurar un programa que tendrá el efecto de aumentar la tarifa mínima." (Bastardillas nuestras.)

Consistentemente ha resuelto el Tribunal Supremo de los Estados Unidos al interpretar el alcance de la Ley Sherman contra Monopolios y de la Federal Trade Commission Act declarando ilegales las prácticas injustas de competencia comercial (comercio entre estados) que, como dijo en el caso de *U. S.* v. *Colgate & Co.,* 250 U. S. 300, 307, la ley "no restringe el derecho por largo tiempo reconocido de un comerciante o fabricante dedicado a un negocio privado, libremente a ejercitar su discreción independiente en cuanto a las personas con quienes habrá de negociar. Y desde luego puede anunciar de antemano las circunstancias bajo las cuales se negaría a vender," doctrina limitada en los de *U. S.* v. *Schrader's Son, Inc.,* 252 U. S. 85, y *Federal Trade Comm* v. *Beech Nut Co.,* 257 U. S. 441, 453, al efecto de que, si bien un comerciante no es culpable de violar la Ley Sherman por negarse a venderle a otros y que puede basar su negativa en el hecho de que ellos no vendían al precio que él les fija para la reventa, "El no puede, de acuerdo con la ley, ir más allá del ejercicio de este derecho y por medio de contratos o combinaciones, expresas o implícitas, indebidamente impedir u obstruir el flujo libre y natural del comercio por los canales del comercio interestatal." Esta doctrina fué últimamente ratificada en el caso de *U. S.* v. *Bausch & Lomb Co.,* 321 U. S. 707. Aun cuando estos casos no se resolvieron bajo la Ley de Emergencia de Precios federal ni envolvían fijación de precios máximos por una agencia del Gobierno, el principio o doctrina expuesta en cuanto al derecho de una persona, natural o jurídica, a dedicarse a un negocio determinado, es el mismo.

En el caso de *Ex Parte Rivera,* 34 D.P.R. 773, declaramos con lugar una petición de hábeas corpus y resolvimos que de acuerdo con el artículo 95 de la Ley Definiendo las Compañías de Servicio Público, tal y como regía en 1921, la viola-

ción de una disposición del reglamento aprobado por la Comisión de Servicio Público que no había sido estatuída como delito no podía ser castigada y dijimos, a la pág. 776: "La prisión es una pena aflictiva que es consecuente al delito, y es elemental en materia penal que ningún hecho puede ser perseguido y castigado a menos que esté expresamente previsto y penado en la ley. Art. 5 del Código Penal."

Se ha resuelto, además, que cuando una persona es encarcelada por haber cometido ciertos actos que no constituyen un delito bajo la ley, la corte carece de jurisdicción en dicho proceso y el acusado puede ser puesto en libertad en un procedimiento de hábeas corpus, aún después de celebrado el juicio y dictada sentencia. 25 Am. Jur., Habeas Corpus, Sec. 42.

Por las razones expuestas, resolvemos que la Corte de Distrito de Mayagüez actuó sin jurisdicción en el caso de *El Pueblo de Puerto Rico* v. *Monserrate Irizarry Marrero* por alegada infracción de la Ley núm. 228 de 1942 toda vez que los hechos imputados en la acusación no constituyen delito público alguno.

*Se declara con lugar la petición y se ordena la excarcelación del peticionario.*

El Juez Asociado Sr. Snyder, por encontrarse ausente en los Estados Unidos continentales, desconoce los términos de la opinión, pero expresó su conformidad con el resultado antes de ausentarse.