EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* ANTONIO ARCE CORTÉS, acusado y apelante.

Núm. 11733.—*Sometido:* Abril 10, 1947. *Resuelto:* Abril. 23, 1947.

*A. Quirós Méndez*, abogado del apelante; *Hon. Procurador General Interino Luis Negrón Fernández*, y *Joaquín Correa Suárez, Fiscal Auxiliar del Tribunal Supremo*, abogados de El Pueblo, apelado.

El Juez Asociado Señor Marrero emitió la opinión del tribunal.

En 8 de agosto de 1946 el Fiscal del Distrito de Aguadilla formuló acusación contra Antonio Arce Cortés porque en dicho día y en el pueblo de Aguadilla ilegal, voluntaria y maliciosamente, y a sabiendas de que violaba la Ley número 228 de 12 de mayo de 1942, según fué enmendada por la Ley número 493 de 29 de abril de 1946, en relación con la Orden Administrativa número 8 promulgada por el Administrador General de Suministros el 8 de septiembre de 1942, se negó a venderle la cantidad de 48 sacos de arroz a Pedro Nieves Román, a pesar de tener suficiente cantidad de arroz en existencia, si éste no le compraba otros artículos, tales como maíz, papas, cebollas, etc., a un costo de $2,000, artículos éstos que el mencionado Pedro Nieves Román ni necesitaba, ni interesaba.

Señalado el caso, el juicio fué celebrado en 19 del mismo mes, y oída la prueba la corte de distrito declaró al acusado culpable del delito imputádole y le sentenció a sufrir la pena de dos años de cárcel y a pagar una multa de $5,000, más las costas.

No conforme con la sentencia impuéstale el acusado apeló oportunamente para ante este Tribunal y en apoyo del recurso interpuesto señala los siguientes errores:

"*Primero:* Erró la Corte al denegar la moción de suspensión solicitada por la defensa.

"*Segundo:* Erró la Corte al denegar la excepción perentoria en la que se alegaba que la acusación no aducía hechos constitutivos de causa de acción contra el acusado y apelante.

"*Tercero:* Erró la Corte al declarar sin lugar la excepción perentoria por falta de jurisdicción de la Corte."

Por considerar que la cuestión planteada en·el segundo señalamiento es la más importante en el caso, discutiremos ésta primeramente. Sostiene el apelante al argumentarlo que aquí ha habido una indebida delegación de poderes "y que es a la Legislatura y a los Honorables Jueces a quienes corresponde declarar lo que es un delito," arguyendo además que al amparo de la Ley el Administrador General de Suministros no tiene poder para definir lo que es un delito y menos para imponer una pena.

Es incuestionable que existen ciertas facultades que el poder legislativo puede delegar en favor de determinado funcionario o junta administrativa. Empero, es natural que la persona o entidad en quien se ha delegado tal autoridad meramente puede aprobar reglas y reglamentos que estén dentro del contexto, propósito y espíritu de la ley que les otorga tal facultad. No es posible que el legislador pueda en una ley prever o anticipar todas las situaciones que surgen como resultado de la aprobación de la misma, y la facultad de aprobar reglas y reglamentos se delega con el fin de que la

ley se implemente y se haga más viable. Véanse 42 Am. Jur. 353, sección 49 y la monografía que aparece en 79 L. ed. 489.

En el caso que nos ocupa, la Ley de manera clara y taxativa autoriza al Administrador General de Suministros a aprobar reglas y reglamentos. Veamos: la núm. 228 de 12 de mayo de 1942 (pág. 1269), según fué enmendada por la núm. 493 de 29 de abril de 1946 (pág. 1475), contiene las siguientes disposiciones:

"Artículo 2.—(c)—El Administrador podrá, de tiempo en tiempo, dictar aquellas reglas y órdenes que crea necesarias para poner en vigor las disposiciones de esta Ley.

"Artículo 3.—(a)—Cuando en el criterio del Administrador el precio o precios de artículos de primera necesidad . . . hayan subido o amenacen subir en una forma inconsistente con los propósitos de esta Ley, dicho Administrador podrá, mediante reglas u órdenes, establecer aquellos precios máximos o beneficios máximos que en su criterio sean generalmente justos y equitativos y que pongan en vigor los propósitos de esta ley; . . . El término 'REGLA U ORDEN' tal como aquí se usa, significa una regla u orden de general aplicación y efecto . . .

"(b)—Cualquier regla u orden emitida de acuerdo con este artículo, podrá ser establecida en tal forma y manera que contenga aquellas clasificaciones y distinciones y provea para tales ajustes o razonables excepciones como sean necesarias y propias, en el criterio del Administrador, para poner en efecto los propósitos de esta Ley. . . .

"(c)—Cuando en el criterio del Administrador sea necesario y propio para poner en efecto los propósitos de esta Ley, podrá reglamentar mediante regla u orden, y podrá prohibir, prácticas especulativas o de manipulación, . . . . .

"      *         *         *         *         *         *         *

"(e)—Las órdenes, reglas y reglamentos dictados bajo esta Ley podrán contener todas aquellas disposiciones que el Administrador crea necesarias para evitar la evasión de los mismos.

"Artículo 10(a)—Será ilegal, . . . . . la venta o entrega por persona alguna de cualquier artículo de primera necesidad . . . . . en el curso de los negocios, . . . . . en violación de cualquier regla u orden expedida bajo esta Ley, . . . . ."

Así pues, es innegable que en la Ley núm. 228 de 1942, según fué enmendada en 1946, se faculta al Administrador de Suministros pàra aprobar reglas y reglamentos que naturalmente estarán en armonía, a tono y dentro del espíritu, contexto y propósito de la Ley.

■■ De acuerdo con la facultad conferídale el Administrador de Suministros procedió a aprobar, con fecha 8 de septiembre de 1942, la Orden Administrativa núm. 8, que en lo aquí pertinente, reza así:

"El Administrador General de Suministros de Puerto Rico por la presente determina que existe en nuestro comercio insular una serie de prácticas especulativas y de manipulación que, en su criterio, equivalen a propender el alza injustificada de precios y que son inconsistentes con los fines de la Ley Núm. 228 de mayo 12 de 1942. En consonancia con estas determinaciones y a virtud de las facultades que le confiere el Artículo 3, Inciso (d) de la antedicha Ley, el Administrador dicta la siguiente *orden:*

  "      ❊      ❊      ❊      ❊      ❊      ❊      ❊

"6.—*Negarse a vender un artículo que tenga en existencia si no se le compran otros que el comprador* no interesa o no necesita." (Bastardillas nuestras.)

Dicha Orden Administrativa tiene nueve apartados y la violación de cualquiera de ellos es castigada por la propia orden con multa máxima de $5,000 y con pena de tres meses a dos años de cárcel.

Se ha resuelto en reiteradas ocasiones que un reglamento aprobado por delegación por un cuerpo administrativo no puede estar en pugna con la ley que otorga la facultad de aprobar el mismo. Se ha decidido igualmente que por reglas o reglamentos no se pueden crear delitos por actos u omisiones no castigados por la ley a virtud de la cual se dictan tales reglas o reglamentos. Véanse *Ex parte Irizarry Marrero,* 66 D.P.R. 672, 676 y casos en él citados; 42 Am. Jur., página 355, sección 50 y la monografía antes citada que figura en 79 L. ed. 491. Véanse también *United States* v. *Eaton,* 144 U.S. 677, que es sin duda un caso cumbre en la

materia, y los de *United States* v. *Grimaud*, 220 U.S. 506, y *Singer* v. *United States*, 323 U.S. 338, en los que se distingue el principio en aquél enunciado.

Se habrá notado que por el apartado 6 de la Orden Administrativa núm. 8 el Administrador trata de prohibir las que muy acertada y gráficamente nuestro pueblo ha dado en llamar "ventas en convoy."

Se habrá visto asimismo que bajo los artículos 2(c) y 3(a), (b), (c) y (e) de la Ley núm. 228, supra, según ha sido enmendada, el Administrador tiene autoridad no solamente para dictar las reglas y órdenes que crea necesarias para poner en vigor la misma, sí que también que podrá prohibir prácticas especulativas o de manipulación y las que creyere necesarias para evitar la evasión de la Ley. Al hacer figurar en su Orden Administrativa núm. 8 que queda prohibido el negarse a vender un artículo que un comerciante tenga en existencia si no se le compran otros artículos que el adquirente no interesa o no necesita, el Administrador no hizo otra cosa que implementar la Ley núm. 228, según fué enmendada, para hacer cumplir los propósitos y fines de la misma. De no permitírsele al Administrador que adopte un reglamento como el aprobado por él prohibiendo transacciones similares a la aquí envuelta, fácil sería para comerciantes poco escrupulosos eludir los precios máximos fijados.

Es cierto que en la Orden Administrativa tantas veces mencionada el Administrador fija una penalidad, mas ella no es otra cosa que la repetición de la penalidad establecida por el estatuto en su artículo 13(b). En su consecuencia, dicha penalidad puede considerarse como materia redundante (*surplusage*) o como una repetición innocua.

Como antes indicamos, por reglamento no se pueden crear delitos. Pero cuando la ley faculta al funcionario administrativo a aprobar reglamentos y a la vez el estatuto castiga la violación de la ley y de tales reglas y reglamentos (artículo 10(a) supra) difícilmente podría decirse que una

acusación formulada al amparo de la ley y el reglamento no aduce hechos constitutivos de delito público.

En el caso número 11818, *El Pueblo* v. *Salvador Rivera Irizarry,* resuelto con fecha 14 de abril del año en curso, (ante, pág. 190), este Tribunal tuvo oportunidad de discutir una cuestión que aunque no idéntica a la aquí envuelta guarda cierta similitud con ella. En aquél se imputó a Rivera Irizarry el haber vendido media libra de bacalao en 15 centavos en violación de la Orden Administrativa núm. 68. La Ley núm. 228, supra, no fija el precio máximo para ningún artículo, sino que autoriza al Administrador a fijar precios máximos. Al resolver la cuestión allí envuelta, este Tribunal dijo lo siguiente:

"La Legislatura creó el delito. El Administrador, ya le llamemos un funcionario o un ciudadano particular, tomó la acción para la cual estaba autorizado en virtud de la Ley núm. 228. Por tanto resolvemos que la violación de la Orden Administrativa constituyó un delito . . .

"No podemos convenir con la contención del acusado de que el delito aquí imputádole no estaba definido por la ley. El artículo 10(*a*) hace ilegal la venta de cualquier artículo en violación de cualquier regla u orden expedida bajo la Ley núm. 228 . . . . . En adición, el artículo 13(*b*) y las disposiciones de la Orden Administrativa fijando penalidades por violación a la misma son idénticas . . .

"El acusado alega también que aunque el artículo 2 (*c*) autoriza al Administrador a dictar reglas y órdenes, la Ley no dispone que tales reglas y órdenes tendrán fuerza de ley. Esta es una contención frívola. El artículo 10(*a*) expresamente hace ilegal la venta de cualquier artículo en violación de una orden o regla del Administrador."

Hemos dicho que el caso de *Rivera Irizarry* guarda similitud con el de autos, porque si bien en él estaba envuelta una venta a sobreprecio, y no una "venta en convoy," las cuestiones de derecho allí resueltas son casi idénticas a la mayoría de las discutidas en el presente. En su consecuen-

cia, lo anteriormente citado podría decirse con igual fuerza en el caso ante nos.

El caso de *Kraus & Bros. Inc.* v. *United States*, 327 U.S. 614, parece ser casi idéntico al que consideramos. En él se alegaba en la acusación que el acusado "ilegal y voluntariamente y a sabiendas *evadió* las disposiciones del Reglamento núm. 269, sección 1429.5, al exigir, compeler y requerir del detallista que comprara patas o pellejos de pollos (skins) a determinado precio como condición para la venta de las aves."

La sección 2(a) de la *Emergency Price Control Act* de 1942 autoriza al Administrador de Precios "a establecer mediante reglamento u orden aquellos precios máximos que a su juicio fueren justos y equitativos para poner en vigor los fines de la Ley" y la sección 2(g) dispone además que los reglamentos y órdenes aprobados de acuerdo con la ley pueden contener aquellas disposiciones que el Administrador considere necesarias para impedir la circunvención o evasión de la misma. De conformidad con la autorización otorgádale, el Administrador aprobó el Reglamento núm. 269, el que provee que los límites de precios en él fijados no serán evadidos por medios directos o indirectos. Al resolver el caso el Tribunal Supremo de Estados Unidos dijo por voz del Juez Murphy que "los elementos de la conducta evasiva deben ser expresados por el Administrador con tal claridad que una persona corriente pueda de antemano saber cómo evitar infringir la ley" (pág. 621) y que "la conducta prohibida debe, a los fines de un proceso criminal, expresarse con claridad en las órdenes y reglamentos que él (el Administrador) está autorizado por el Congreso para promulgar de acuerdo con la Ley." (Pag. 622.) Se dijo también que el referido reglamento no hacía mención específica de "tying agreements or combination sales", pero que para los fines del caso había que admitir que entre las formas de evasión el Administrador legalmente podía incluir "ventas en convoy" (tying agreements and combination sales) que envolvieran

la venta de productos secundarios a su valor en el mercado. En vista del contexto poco claro del reglamento el Tribunal Supremo llegó a la conclusión de que el mismo sólo prohibía aquellos "tying agreements or combination sales" que envolvieran efectos que carecían de valor o que se vendían a precios artificiales y ordenó que el caso fuera devuelto a la corte inferior para un nuevo juicio.

Sin embargo, en el referido caso de *Kraus & Bros.* v. *United States* se hace constar, a la página 625 que "los reglamentos sobre carnes y ropas contienen disposiciones que prohiben que una venta de carne o ropa dependa de que el adquirente tenga que comprar algún otro producto."

En *United States* v. *Armour & Co. of Delaware*, 50 F. Supp. 347, estaba envuelta una cuestión similar a la del presente caso y en él se resolvió que una acusación en que se imputa la violación de un reglamento similar a la Orden Administrativa núm. 8 aquí envuelta es suficiente. Véanse también: *United States* v. *George F. Fish, Inc.*, 154 F.2d 798 y *Coffin-Redington Co.* v. *Porter*, 156 F.2d 113.

En relación con la Ley núm. 6 de 17 de noviembre de 1941 (Ses. Ext., pág. 15), a virtud de la cual se creó una comisión que estaba facultada para determinar los precios a que podían venderse los artículos de primera necesidad, este Tribunal ha resuelto varios casos y en todos ellos ha llegado a la conclusión de que una venta efectuada a un precio en exceso del fijado en los reglamentos por la Comisión allí creada constituye un delito público. Véanse *Pueblo* v. *Díaz*, 62 D.P.R. 136; *Pueblo* v. *Ortiz*, 62 D.P.R. 298; y *Pueblo* v. *Martínez*, 62 D.P.R. 734.

El caso *Ex parte Irizarry Marrero*, 66 D.P.R. 672 es distinto al presente. Allí se acusó a Irizarry Marrero por negarse a vender, y al ser sentenciado por la corte inferior éste acudió ante nos mediante un recurso de hábeas corpus. Resolvimos que bajo la Ley 228 de 1942 no constituía delito público el negarse a vender. Sin embargo, allí la ley de manera taxativa proveía que: "Nada en esta Ley se interpre-

tará en el sentido de obligar a persona alguna a vender artículos de primera necesidad.''

Resumiendo, llegamos a las siguientes conclusiones:

(1) Que el Administrador estaba plenamente facultado para aprobar las reglas y reglamentos que dictó;

(2) Que la Orden Administrativa Núm. 8 por él aprobada está dentro del propósito y espíritu de la Ley núm. 228, según ésta ha sido enmendada;

(3) Que si bien la citada Orden núm. 8 fija una penalidad, ella no es otra cosa que la penalidad provista por el artículo 13(b) de la Ley y no un delito distinto al provisto por ésta, y

(4) Que la acusación en los términos que está redactada imputa un delito público.

Resuelto así el segundo error señalado, procederemos ahora a discutir los errores primero y tercero. El primero de ellos, como se recordará, se refiere a que la corte cometió error al denegar la moción de suspensión solicitada por la defensa. El suspender un juicio descansa siempre en la sana discreción de un tribunal y esta Corte Suprema no intervendrá con tal discreción a no ser que se demuestre que ha habido abuso en el ejercicio de ella. *Amy* v. *Barceló, Juez,* 59 D.P.R. 661. Sostiene el acusado que la corte debió acceder a su solicitud, ya que estaba haciendo gestiones para que el Administrador General de Suministros le resolviera la causa administrativamente. No tiene en ello razón. El artículo 13(b), en su primer *Disponiéndose* sólo provee ''que cualquier causa o proceso así iniciado deberá ser archivado, previo el pago de costas, *cuando la persona procesada o su representante legal acrediten el haber satisfecho la multa administrativa que le hubiere sido fijada por el Administrador General de Suministros . . . .* '' (Bastardillas nuestras.) No dice en forma alguna ese artículo que la corte ante la cual se esté viendo un caso por infracción a la Ley núm. 228 deberá suspenderlo cuando meramente se están haciendo

gestiones ante el Administrador por el acusado. Carece igualmente de méritos esta contención.

El tercer señalamiento se refiere a la falta de jurisdicción en la Corte de Distrito de Aguadilla para conocer de la causa. A este respecto diremos que si bien en *Ex parte Irizarry,* supra, resolvimos (pág. 683) "que cuando una persona es encarcelada por haber cometido ciertos actos que no constituyen un delito bajo la ley, la corte carece de jurisdicción en dicho proceso y el acusado puede ser puesto en libertad en un procedimiento de hábeas corpus . . . . . ," ello es así cuando no hay delito público mas no cuando se resuelve que la acusación imputa delito. Además, la Corte de Distrito de Aguadilla era la llamada a conocer de la acusación, ya que la Ley (artículo 13(*b*)) provee claramente que "la corte de distrito del lugar donde se realice el acto o transacción constitutivo del delito, tendrá jurisdicción original sobre dicha ofensa y el juicio se celebrará por tribunal de derecho . . . ." Habiéndose cometido el delito en la ciudad de Aguadilla no hay duda de que la llamada a conocer del mismo lo era la corte de aquel distrito.

Ahora bien, resuelto así el caso creemos que nada hay en la acusación ni en la prueba que justifique la penalidad severa impuesta. En su virtud *la sentencia será modificada para imponer al acusado $1,000 de multa y cuatro meses de cárcel, más las costas, y así modificada confirmada.*